The Chicago and Eastern Illinois Railroad Company

*v.*

Adolph Loeb.

*Filed at Ottawa March 26, 1884—Rehearing denied September Term, 1886.*

1. Damages—*to real estate—by nuisance—when future damages recoverable.* In an action brought for a deterioration in the value of real estate, occasioned by a nuisance of a permanent character, or which is treated as permanent by the parties, all damages for the past and future injury of the property may be recovered, and one recovery in such a case is a bar to all future actions for the same cause.

2. Action—*for injury to land—when not transferable with the land.* Where private lots in a city are physically damaged, or injured in value, by the construction and operation of a railroad in close proximity thereto along a public street, the right of action, if any exists, is vested in the owner of the lots immediately upon the construction of the railroad, to recover for all damages, past, present and future, and a subsequent grantee of the lots can not maintain an action at all for the proper use and operation of the road, after his purchase.

3. Nuisance—*railroad in public street.* A railroad track laid upon a street of a city by authority of law, properly constructed, and operated in a skillful and careful manner, is not, in law, a nuisance.

4. Eminent domain—*compensation for damage to property not taken.* Prior to the adoption of the constitution of 1870, no compensation was required to be paid for property not taken for the public use, but which was damaged by the construction and maintenance of public improvements. Under

| | |
|---|---|
| 118 | 203 |
| 121 | 163 |
| 121 | 166 |
| 123 | 444 |
| 123 | 634 |
| 26a | 286 |
| 118 | 203 |
| 124 | 119 |
| 27a | 324 |
| 118 | 203 |
| 131 | 302 |
| 118 | 203 |
| 33a | 25 |
| 33a | 160 |
| 118 | 203 |
| 134 | 290 |
| 135 | 560 |
| 118 | 203 |
| 35a | 176 |
| 118 | 203 |
| 141 | 55 |
| 118 | 203 |
| 42a | 130 |
| 118 | 203 |
| 44a | 221 |
| 118 | 203 |
| 156 | 566 |
| 157 | 134 |
| 48a | 359 |
| 118 | 203 |
| 54a | 189 |
| 58a | 462 |
| 118 | 203 |
| 61a | 81 |
| 118 | 203 |
| 64a | 154 |
| 118 | 203 |
| 105 | 524 |
| 167 | 280 |
| 118 | 203 |
| 75a | 578 |
| 118 | 203 |
| 87a | 22 |
| e87a | 598 |
| 118 | 203 |
| 192 | 4246 |
| 192 | 1247 |
| 118 | 203 |
| 194 | 579 |
| 100a | 2329 |
| 100a | 2330 |
| e100a | 4337 |

that constitution, an action by a lot owner for a physical injury to his property by constructing and operating a railway in the public street near his lot, may be regarded as a proceeding to recover just compensation for private property damaged for the public good; and in such case the assessment will be in full compensation for all present and future damages, and one recovery will bar any subsequent action for the same cause.

5. The just compensation to be made for damage to land is intended as an indemnity, not for successive, constantly accruing damages as they may afterwards be suffered, but for all the land owner may suffer from all the future consequences of the careful and prudent operation of the proposed public structure or other improvement.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. ELLIOTT ANTHONY, Judge, presiding.

Mr. WILLIAM ARMSTRONG, for the appellant:

Lands and chattels are not, strictly speaking, property, but the objects of property. 3 Bentham's Works, 221; *Eaton* v. *Railroad Co.* 51 N. H. 504; *Wynehamer* v. *People*, 13 N. Y. 378; *Rigney* v. *Chicago*, 102 Ill. 64.

The casting of smoke, cinders, etc., in connection with the construction of the railroad, upon the premises of appellee, was a taking of his property. *Pumpelly* v. *Green Bay Co.* 13 Wall. 166; *Nevins* v. *Peoria*, 41 Ill. 502; *Gillham* v. *Railroad Co.* 49 id. 484; *Aurora* v. *Gillett*, 56 id. 132; *Aurora* v. *Reed*, 57 id. 29; *Jacksonville* v. *Lambert*, 62 id. 519; *Dickson* v. *Baker*, 65 id. 518; *Railway Co.* v. *Morrison*, 71 id. 616; *Rigney* v. *Chicago, supra.*

As there can be but one taking, and as the Chicago, Danville and Vincennes Railroad Company constructed the road and operated it for several years, it became liable for the entire damage caused by the taking. Mills on Eminent Domain, sec. 216; *Railroad Co.* v. *Erhart*, 13 Bush, 669; *Railroad Co.* v. *Grabill*, 50 Ill. 241; *Railroad Co.* v. *Maher*, 91 id. 312; *Decatur Gas Co.* v. *Howell*, 92 id. 19.

If the original nuisance is of a permanent character, so that the damage is permanent, a recovery not only may, but

must, be had for the entire damage. Wood on Limitations, 372; *Troy* v. *Railroad Co.* 23 N. H. 101; *Powers* v. *Council Bluffs,* 45 Iowa, 652; *Railroad Co.* v. *Millman,* 17 Kan. 224; Wood on Nuisances, 889.

On the completion of the railroad, the damages, if any, to the lots, accrued, and the owner had the right to recover at once for the injury, past present and future. *McConnel* v. *Kibbe,* 29 Ill. 483; 33 id. 175; *Cooper* v. *Randall,* 59 id. 317; *Railroad Co.* v. *Moffitt,* 75 id. 524.

Mr. H. O. McDAID, for the appellee:

This court has adopted a satisfactory rule, both as regards the definition of property and what constitutes a taking thereof. *Rigney* v. *Chicago,* 102 Ill. 64.

Appellant's counsel is in error when he says there can be but one taking of property. The taking may be partial or complete, temporary or permanent. It may be a taking of the *corpus,* or a deprivation, or a partial deprivation, of the beneficial use, (and in the latter class there may be almost infinite degrees,) or it may carve out of the fee an easement, which may leave the legal title, merely, in the owner, but with the beneficial estate practically obliterated. *Tanner* v. *Valentine,* 75 Ill. 627; *Wallace* v. *Butz,* 1 Yeates, 574; 4 Dall. 147.

Again, the *quantum* and character of the injury determine the scope of the taking. *Rigney* v. *Chicago,* 102 Ill. 64.

So far as this record shows, the Danville road did no act that was injurious to appellee's property, or did any act that would vest any right of action against it. The laying of its tracks was lawful, and no right of action arose from that cause.

When the use of a structure is the sole cause of the injury, the damage arising from the use is the cause of action. *Crosby* v. *Berry,* 49 Maine, 543; *Polly* v. *McCall,* 37 Ala. 20; *Branch* v. *Doane,* 17 Conn. 402; *Norcross* v. *Thomas,* 51 Maine, 503; *Brightman* v. *Bristol,* 65 id. 426.

The operating of appellant's railway caused a private nuisance to appellee's property. *Cooper* v. *Randall,* 53 Ill. 24; *Railroad Co.* v. *Hall,* 90 id. 45.

Recovery in an action on the case for depreciation of value is equivalent to granting an easement, or parting with an interest in land. *Railroad Co.* v. *Andrews,* 26 Kan. 711; *Railroad Co.* v. *Esterle,* 13 Bush, 669; *Fowle* v. *New Haven and Northampton Co.* 112 Mass. 338.

One who continues a nuisance commits a new wrong. Cooley on Torts, 611; *Nichols* v. *Boston,* 98 Mass. 39.

The authorities establish that appellant is liable—First, by repairing, and reconstructing and making an effective, injurious nuisance; second, by going into possession and actually using and operating the repaired and reconstructed railroad; and third, by casting smoke, cinders and ashes on appellee's premises, and depreciating the value thereof. *Weld* v. *Hornby,* 7 East, 198.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was an action on the case, brought by Adolph Loeb, against the Chicago and Eastern Illinois Railroad Company, on June 9, 1880, in the Superior Court of Cook county, to recover damages sustained from the operation of defendant's railroad, by throwing smoke, cinders and ashes upon plaintiff's premises. Upon a trial by the court, without a jury, there was judgment for the plaintiff for $1200, which was affirmed by the Appellate Court for the First District, and the defendant appealed further to this court.

The declaration avers, that plaintiff was the owner of three certain lots in Chicago, with the buildings thereon, which were used for dwellings, and that defendant wrongfully and unjustly maintained and operated near by plaintiff's property, divers railway tracks and switches upon the street, within ten feet of the property; "that steam engines have passed and repassed along the property, and in doing so have unlawfully

and unjustly caused to be thrown and deposited in and upon plaintiff's property, large quantities of smoke, cinders, dust, soot, ashes, sparks of fire, and other substances, and in operating the same they greatly disturbed and vibrated the buildings; that by reason of the close proximity to said premises, the defendant has constantly thrown and deposited upon plaintiff's property, smoke, cinders, soot, dust and ashes, and other substances, which greatly damaged the same, and depreciated the value of the property." There were two pleas,— the general issue, and the Statute of Limitations of five years.

The following facts appear: The Chicago, Danville and Vincennes Railroad Company was created by a private charter February 16, 1865, and during the year 1872, under its charter, and the permission of an ordinance of the city of Chicago, it built a railroad on the west side, and on one of the public streets. It used the same as a railroad until April, 1877, when all its property in this State was sold under a mortgage foreclosure to Messrs. Huidekoper, Dennison & Shannon, who afterwards conveyed the same to the Chicago and Nashville Railroad Company, which company consolidated with the State Line and Covington Railroad Company, creating the Chicago and Eastern Illinois Railroad Company, the defendant. The plaintiff, during the year 1876, purchased the three lots in question, being seventy-five feet on May street and one hundred and twenty-five feet on Carroll avenue, near the said railroad, which railroad had been in constant operation since 1872, and on the lots there were four tenement houses at the time of his purchase. After he purchased the lots, the plaintiff purchased two more houses and moved them on the lots, making, then, six houses on the lots. The plaintiff rented the houses to tenants, and the same have, ever since he became the owner thereof, been occupied by his tenants.

At the trial, the defendant submitted to the court the following proposition of law: "The plaintiff in this case having

purchased the property described in the declaration, after the railroad was built and in operation, he can not recover in this action for the matters stated in the declaration, for the reason that the entire cause of action for which he is now suing was in his grantor, and it makes no difference whether his grantor sued for the same or not." The court refused the proposition, and the defendant took exception. The soundness of the above proposition is to be considered.

The position taken by appellee is, that the operating of the railway caused a private nuisance to his property; that the construction of the railroad was lawful, and produced no damage, but that the operation of the railroad was the sole cause of the injury, and that, in such case, where the structure in itself does not cause damage, but its use, then the damage arising from its use is the cause of action; that the grantee of premises upon which a nuisance is erected, is liable for damages ensuing from his maintenance of it, because every day's continuance of a nuisance is a new nuisance.

There is quite a weight of authority to the effect, that one may bring suit for the deterioration in value of real property from a nuisance, alleging its permanency, and that by such an action the plaintiff consents to the continuance of the nuisance, and accepts the judgment recovered, as a compensation therefor,—that such recovery will have the effect to give the defendant a permanent right to do the acts which constitute the nuisance, as fully as though there had been a condemnation of the property by the exercise of the power of eminent domain. (Sec. 3, Sutherland on Damages, 413, 414.) Thus, in *E. L. and B. S. R. R. Co.* v. *Combs*, 10. Bush, 393, the action was for the throwing of smoke, cinders and ashes on premises, and the court, in speaking of the right to a subsequent recovery, which was denied, say: "We have heretofore held, in actions for injury to real estate by trespassers, that the plaintiff can only recover compensation for the injury done up to the commencement of the action; but

that was in case of injuries not continuing and permanent in their character. The injury in this case, if any, is permanent and enduring, and no reason is perceived why a single recovery may not be had for the whole injury to result from the acts complained of." And in *J. M. and I. R. R. Co.* v. *Esterle*, 13 Bush. 669, which was also an action for the throwing of smoke, cinders and ashes on land, the court say: By instituting this action for damages, the lot owner, in effect, consents that the railroad company may continue for all future time to use the street as it is now using it, and as consideration therefor to accept such judgment as may be therein rendered. In *C. B. U. P. R. R. Co.* v. *Andrews*, 26 Kan. 711, an action to recover damages for interference with an alley, it is said by the court, upon this point: "The plaintiff has chosen to consider the obstruction of the alley as a permanent injury to his lots,—as a *quasi* condemnation and permanent taking and appropriation of a certain interest in his property. * * * It seems to us that he gives his consent (that his property shall be permanently appropriated) when he brings an action for such damages. It seems to us that he then consents that the railroad company shall permanently appropriate his property in the alley, for he then brings his action for damages because of such appropriation." In *Fowle* v. *N. H. and N. R. R. Co.* 112 Mass. 334, where the action was for damages caused by the building of a railroad in such a manner that at times the current of a certain stream would be thrown upon the plaintiff's land, the court say: "And if it (injury) results from a cause which is either permanent in its character, or which is treated as permanent by the parties, it is proper that entire damages should be assessed with reference to past and probable future injury." And see *Town of Troy* v. *Cheshire Railroad Co.* 3 Foster, (N. H.) 83; *Powers* v. *City of Council Bluffs*, 45 Iowa, 652; *Kansas Railroad Co.* v. *Mihlman*, 17 Kan. 224.

It has frequently been held by this court, that in an action brought for deterioration in the value of real estate, from a nuisance of a permanent character, all damages for past and future injury to the property may be recovered, and that one recovery in such action will be a bar to all future actions for the same cause. *Ottawa Gas Co.* v. *Graham,* 28 Ill. 73; *Illinois Central Railroad Co.* v. *Grabill,* 50 id. 242; *Cooper* v. *Randall,* 59 id. 321; *Decatur Gas Co.* v. *Howell,* 92 id. 19; *Chicago and Alton Railroad Co.* v. *Maher,* 91 id. 312. The latter was an action of much the same character as the present. It was an action of trespass for damage to the premises of an adjoining land owner, by the construction and operation of a draw railroad bridge across the Chicago river, on which plaintiff's property abutted, and which was used as dock property. After the bridge was constructed, and had been in operation for considerable time, Maher, who was the owner when the bridge was built, sold the premises to the plaintiff in the suit, who was his wife. The same question was presented there as here,—whether the plaintiff might recover for damages she had sustained by the continuance of the obstruction since she purchased. The solution of the question was found by the court in the determination that the character of the cause of injury was such, from its permanency, that one recovery would be a bar of all future actions growing out of the erection of the structure; that Maher, the original owner, might have sued for and recovered all the damages which were sustained by the property from the erection, whether at the time or in the future; that that being true, the right of action was in him for a recovery of all damages that were or might be caused by the structure, and as that right could not be transferred to his grantee, the plaintiff, there was in her no right of recovery. The distinction which appellee's counsel draws in that case, that it was one of trespass, some piles in the protection of the bridge having been actually driven in Maher's land, does not make a satis-

factory discrimination. There is no significance in that action having been one of trespass and not case, as our statute has abolished all distinctions between the actions of trespass and trespass on the case. The decision was not rested upon the point of that act of trespass committed being the only cause of action, but upon the permanent character of the structure, as giving a right of recovery once for all, and the continuance of the obstruction since the purchase by the plaintiff being urged as ground of recovery in the case, was met by the court in the manner above stated.

If the above doctrine as to entireness of recovery in one action, where the cause of injury is of a permanent kind, is to be admitted, it should apply peculiarly in this character of case. The cause of damage here is not a nuisance proper.

A railroad track laid upon a street of a city by authority of law, properly constructed, and operated in a skillful and careful manner, is not, in law, a nuisance. *Randle* v. *Pacific Railroad Co.* 65 Mo. 332 ; *Danville Railroad Co.* v. *Commonwealth,* 73 Pa. 38. In *Illinois Central Railroad Co.* v. *Grabill,* above cited, it was said : "There is no complaint in the declaration of annoyance by the running of engines, the escape of steam, or otherwise, near her (plaintiff's) premises. Such consequences of the construction and use of railroads must be borne by all living near them, and without hope of redress, for they are inseparable from the purposes and objects of such structures." And see *Moses* v. *Pittsburgh, Ft. Wayne and Chicago Railroad Co.* 21 Ill. 516. There is no complaint, here, that the railroad is not properly constructed, or that it was not operated in a skillful and careful manner.

It belongs to the idea of a nuisance, that it is abatable. In the original actions *assize of nuisance,* and *quod permittat prosternere,* the former being brought against the one who levied the nuisance, and the latter against the alienee of him who levied the nuisance, the judgment thereon, besides damages for the temporary loss sustained, was for an abatement

of the nuisance. These actions finally went into disuse, and the action on the case became the remedy, and a party injured by a private nuisance might bring his action *toties quoties*, until the obstinacy of the party maintaining such nuisance should be overcome by repeated recoveries against him, and the nuisance be .abated. (3 Blackstone's Com. 222.) But a railroad built by authority of law, or the operation of it, is not to be, and should not be, abated. It is built for the ac- commodation of the public. This is the object which justifies the exercise of the power of eminent domain, and the public welfare demands that there should not be discontinuance of the operation of an authorized railroad. Thus there is not, in such case, the same reason as exists in cases of ordinary private nuisance, for allowance of bringing actions as injury is done, which, as Blackstone says, will have the same effect as *assize of nuisance*, or *quod permittat*, "unless a man has a very obstinate as well as ill-natured neighbor, who had rather continue to pay damages than remove the nuisance."

For the class of injuries here sued for,—injuries neces- sarily resulting from the operation of a railroad,—there was no remedy, as we understand, previous to the constitution of 1870. The constitution of 1848 provided only that private property should not be taken for public use without just com- pensation. The provision for the first time was incorporated in the constitution of 1870, that "private property shall not be taken *or damaged,* for public use, without just compensa- tion. Such compensation, when not made by the State, shall be ascertained by a jury, as shall be prescribed by law." Before the adoption of the latter constitution, where there was land taken for public use, there was provision for com- pensation. But where there was other disconnected land not touched by the improvement, but damaged, merely, as com- plained of in this case, no compensation was provided. To meet this want, the clause of the constitution restrictive of the exercise of the power of eminent domain, provides that

private property shall not be taken *or damaged* for public use without just compensation.

We think it to be within the true intent and meaning of this provision as to damage, that there should be but one proceeding for recovery of damage, in which there should be recovery for the entire damage, past, present and future; that it should be similarly regarded, in this respect, as the provision in regard to the taking of property, where there is but one proceeding, and an assessment of compensation and damages once for all. The two provisions are coupled together, and are both in restriction of the exercise of the power of eminent domain. In respect to the awarding of compensation for the taking of private property for public use, Mills, in his work on Eminent Domain, sec. 216, says: "The appraisement embraces all past, present and future damages which the improvement may thereafter reasonably produce." Had the railroad track in this case been laid over a portion of one of these lots, then, in the condemnation proceeding for the taking of such portion, compensation would have been assessed for the value of the portion thus taken, and for the damage to the residue of the lot not taken. Such assessment would have embraced all future damage. As well here, in this case of no taking of land, might all the damages, past and future, from the operation of the railroad, be assessed, as they might be to the remainder in such supposed case of the taking of a part of a piece of land. If there might be successive recoveries, from time to time, of the constantly recurring damages, then, as was said in the *Grabill case,* "a similar recovery might be had at every term of the court, and in this shape the plaintiff might recover ten-fold the value of the property." We do not think that this constitutional provision intended any such result,—that the just compensation given for the damaging of land might be greater than that for the taking of the land.

The just compensation to be made for damage to land, was, in our opinion, intended as an indemnity, not for successive, constantly accruing damages recoverable, as they may afterward be suffered, but for all the damage the land owner may suffer from all the future consequences of the careful and prudent operation of a railroad; it being the immediate damage done to the land owner's estate by changing its permanent condition and impairing its present value. See *Heard* v. *Middlesex Canal Co.* 5 Metc. 81. The action for damage may be regarded as in the nature of one kind of condemnation proceeding.

Upon this point of estimation of damages, it was said in the *Maher case*, that the structure being permanent in its character, "it could be determined, with a reasonable degree of certainty, how much it depreciated the value of the land, as a permanent structure—how much less it was worth after the erection of the structure than before." This measure of damages is recognized in the cases above cited from Bush, and in *C. and I. R. R. Co.* v. *Baker,* 73 Ill. 316, and *C. and P. R. R. Co.* v. *Stein,* 75 id. 41, and also in *Powers* v. *City of Council Bluffs, supra,* (a case of damage to premises resulting from the improper construction of a ditch,) where the court say: "The plaintiff's damage was susceptible of immediate estimation. No lapse of time was necessary to develop it. It was the difference between the value of his lots as they would have been if the ditch had been properly constructed, and the value of them as they were, with the ditch as it was," (page 657,) and on page 656 it was said: "If the cause of the injury is permanent, the damages can be foreseen and estimated." With so much of certainty can the benefits or damages to real property which will result from the construction of a railroad, be foreseen, that the mere location of the line of a railroad has an immediate effect upon the value of all real property in the vicinity, in enhancing or depreciating it.

As all damages, then, which will be sustained as the necessary result of the operation of the road, can be immediately

estimated at the time of the construction and putting in operation of a railroad, from the effect on the value of the land to be damaged, it would seem to answer all just purpose of the land owner, to allow but one action, in which there might be recovery for all damages. The allowance of successive actions for damage, as it should occur from day to day, as new damage, would seem to serve but the purpose of harassing, and the wasting of means in expenses of litigation. The law does not favor the multiplying of actions.

A further view is, that the plaintiff purchased the property as it was, with its surroundings. The railroad was there, and in operation, and plaintiff bought the property with the disadvantage of the railroad. The railroad must be presumed to have decreased the market value of the property from what it would have been without the road, and it is to be taken that plaintiff paid but this decreased value for the property, so that, in effect, he has been allowed for all these damages resulting necessarily from the operation of the railroad, in the reduced price which, on that account, he paid for the property; and for him now to recover for such damages in this action, would be getting for himself a double allowance for the same thing,—these damages. See *Toledo, Wabash and Western Railroad Co.* v. *Morgan,* 72 Ill. 155; *Kutz* v. *McCune,* 22 Wis. 628; Mills on Eminent Domain, sec. 66; *Memmert* v. *McKeen,* 112 Pa. St. 315.

The conclusion is, that as the former owner could have sued and recovered for the depreciation in the value of the property caused by the railroad, the right of action was in him for a recovery of all damages that were or might be caused in the operation of the railroad, and that there is no right of recovery in his alienee, the appellee.

It follows that there was error in refusing the above proposition of law, and the judgment will be reversed and the cause remanded.

*Judgment reversed.*

Mr. Justice Dickey: . I can not concur in the views here expressed. I do not think our laws give to railroad companies a right by prescription, in five years, without payment of compensation.

Separate opinion by Mr. Justice Scholfield:

As I understand this record, I concur in the judgment rendered; and I also concur, in the main, in the reasoning of the opinion by Mr. Justice Sheldon. To avoid misapprehension, however, I prefer to state, in my own way, briefly, the grounds on which my conclusion is based.

A railroad in the streets of a city, when not authorized by law, is a *nuisance per se;* and hence there may, in such cases, be recoveries by those whose property is injured thereby, from time to time, until it shall be abated. But before the adoption of our present constitution it was held, that where there was legislative authority, a city council might authorize the location, construction and operation of railroads in the streets of cities, and that there could be no recovery by adjacent property holders for injuries sustained in consequence of their location, or of their construction, or of their operation, in the usual and ordinary manner of constructing or operating railroads,—that all damages thus arising were *damnum absque injuria. Moses* v. *Pittsburgh, Fort Wayne and Chicago Railroad Co.* 21 Ill. 522, *et seq.*

The only clause in our present constitution affecting the question, is that which provides that "private property shall not be damaged for public use without just compensation." This court held, in *Stetson* v. *Chicago and Evanston Railroad Co.* 75 Ill. 74, (and the ruling has since been followed in kindred cases,) that it is not indispensable to the right to construct and operate a railroad in the streets of a city, that the damages occasioned thereby to adjacent property holders shall have been previously ascertained and paid,—in other words, that a railroad may be lawfully constructed and operated in

the streets of a city, notwithstanding it shall cause injuries to adjacent property holders, the damages resulting from which shall not have been previously ascertained and paid.

It is sufficiently accurate to say, that this railroad is permanent. The company is authorized, by its charter and by an ordinance of the city council, to locate and construct its road in the street. The right to locate and construct a railroad implies the right to operate it in the usual and ordinary manner, and while the constitution requires that damages arising from injuries thereby occasioned shall be compensated, yet, according to the doctrine of the *Stetson case,* such injuries are not in the nature of a nuisance, for which the railroad can be abated, but are rather in the nature of a condition subsequent. It must result, from the railroad being lawfully constructed in the street, and from the company having the implied right to use and operate it as railroads are ordinarily used and operated, that the railroad company has the further necessarily incidental right to injure adjacent property in the manner and to the extent that such ordinary use and operation will necessarily injure it, subject to the right of the owner to have compensation made therefor. And, the railroad being permanent, the injury must be equally permanent, affecting the property from the time the road is constructed, and a right of action, therefore, then accrues, on the authority of the cases referred to in the opinion of Mr. Justice Sheldon, to recover, once for all, the damages resulting from the injuries sustained to the property. And it is, manifestly, upon this assumption that the General Assembly have provided, in the Eminent Domain act, for the compensation, once for all, of such damages. The authority to lay tracks in the streets, measures the extent of the contemplated probable use; and, on the question of damages to adjacent property, it is, therefore, to be assumed that the tracks authorized to be laid may be used to the full measure of their capacity; and so, at once and ever after, the char-

acter and degree of damages sustained by the adjacent property holder is patent to all.

I concede, that if, after the road is constructed, authority be given by the city council, and new tracks shall be laid which were not within the authority conferred by the council when the road was constructed, or that if the tracks laid when the road was constructed shall be subjected to a new and more burdensome use which was not within the authority conferred by the city council when the road was constructed, and adjacent property holders shall be injured by such new tracks or such new and more burdensome use, they may recover for the damages resulting therefrom; and I also concede that the adjacent property holders may recover, from time to time, for damages resulting from willful or negligent acts as to which the company would not have been protected by its charter, and the license and authority of the city council, to lay its tracks in the streets, before the adoption of the present constitution. But the vibration caused to appellee's property, the casting of smoke, soot, etc., upon it, here complained of, I understand, result from the ordinary, prudent use and operation of the railroad, as such roads are, in general, used and operated. The injury for which damages are claimed, is that necessarily to be anticipated as resulting from the mere fact of the prudent construction and operation of a railroad in the streets of a populous city.