Metropolitan West Side Elevated R. R. Co. v. Goll.

ALDEN, LATHAM & YOUNG, attorneys for appellee.

## Metropolitan West Side Elevated R. R. Co. v. Emma A. Goll.

| 100 | 323 |
| 102 | 243 |

| 100 | 323 |
| 105 | 220 |

1. RAILROADS—*Laid in City Streets by Authority.*—A railroad track laid by authority of law upon a city street, if properly constructed and operated in a skillful and careful manner, is not, in law, an actionable nuisance, owing to the fact that it is constructed and operated by authority of law; and damage caused by it to neighboring property owners, was without remedy in this State until the adoption of the constitutional provision of 1870, that private property should not be taken or damaged for public use without compensation.

2. DAMAGES—*In Actions for Damaging Property for Public Use.*—In an action for damaging private property for public use the recovery must include the entire damage, past, present and future, and must be assessed in the one action.

3. NUISANCES—*Noise in the Vicinity of Dwellings.*—Noise and disturbance in the immediate vicinity of the dwelling house of a land owner may be of such a character as to constitute an actionable nuisance, remedial by an action on the case for damages or by an injunction.

4. PROPERTY—*Defined—Damages to—When a Recovery May be Had.*—Property is defined as that dominion or indefinite right of user and disposition which one may lawfully exercise over particular things or subjects and generally to the exclusion of all others. For damage to private property as thus defined, when inflicted for the use of the public, a recovery may be had.

# 324    APPELLATE COURTS OF ILLINOIS.

VOL. 100.] Metropolitan West Side Elevated R. R. Co. v. Goll.

5. SAME—*In What the Damage to Private Property Must Consist.*—Under the Constitution of 1870, it is sufficient if there is a direct physical obstruction or injury to the right of user or enjoyment by which the owner sustains some special pecuniary damage in excess of that sustained by the public generally, which by the common law would, in the absence of constitutional or statutory provisions, give a right of action.

6. RECOVERY—*Essentials to.*—To warrant a recovery for private property damaged for public use, it must appear that there has been some direct physical disturbance of a right, either public or private, which the plaintiff enjoys in connection with his property and which gives it additional value, and that by reason of such disturbance he has sustained a special damage in excess of that sustained by the public generally.

7. SAME—*Sentimental Disturbance Not Sufficient.*—A merely sentimental disturbance is not an element of injury for which a recovery can be had. A railroad company may disturb an æsthetic sensibility, and thus impair the enjoyment which occupants of private property formerly had, and still not impair any legal right, nor give ground for the recovery of damages, although such disturbance may have some effect in depreciating the market value of private property. It must appear that there has been an injury direct and physical, or " really peculiar," to the right of user and enjoyment.

8. SAME—*Where the Right of Recovery Exists.*—The right of recovery exists where, for the benefit of the public, private property has been specially, even though lawfully, damaged in excess of the damages sustained by the public generally, and such change must be occasioned by a direct physical disturbance of a property right of a character for which redress could have been had at common law, if such disturbance had not been authorized by statutory enactments.

9. DAMNUM ABSQUE INJURIA—*Defined and Illustrated.*—There are certain injuries which are necessarily incident to the ownership of property in towns and cities which directly impair the value of private property, for which the law affords no relief. For instance, the building of a jail, police station or the like will generally cause direct depreciation in the value of neighborhood property. Yet such is clearly a case of *damnum absque injuria.*

10.. SAME—*Applies to Corporations and Natural Persons Alike.*—Corporations as well as natural persons have the right to the reasonable use and enjoyment of their own private property, and if, in such use, without negligence or malice, a loss, unavoidably, falls on a neighbor, the latter can not, as a general rule, recover damages.

11. SAME—*Rule Applicable to Railroad Companies.*—A railroad company has the same right to the lawful use and enjoyment of its private property as an individual, and if, in such use and enjoyment of such right, without negligence or malice, an inconvenience or loss occurs to adjacent owners, it is *damnum absque injuria.*

12. CORPORATIONS—*Application of the Doctrine of Damnum Absque Injuria.*—There is no reason why the doctrine of *damnum absque injuria*

is not as applicable to a railroad company with reference to its private property as to a private person. But when either a private person or a corporation so uses his or its property as to cause damage actionable at common law, both are liable, and the corporation is not protected from such liability by the fact that it has been authorized by statute to do the things which have occasioned such damage.

13. NOISE—*Necessary Ordinary Noise of Passing Trains Not an Element of Damages.*—Necessary and ordinary noise of passing trains, operated without negligence and with the most approved appliances, is not an element of damages for which compensation can be had.

14. MEASURE OF DAMAGES—*After the Construction of a Railroad.*—After the construction of a railroad in operation, the measure of damages is not necessarily the difference in value of property before and after the alleged damage. It is the depreciation actually caused by such construction and operation and not that caused by other matters.

**Action on the Case.**—Private property damaged for public use. Appeal from the Circuit Court of Cook County; the Hon. ELBRIDGE HANECY, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1900. Reversed and remanded. Opinion filed February 21, 1902.

This is an appeal from a judgment against appellant recovered in an action for damages alleged to have been caused to appellee's premises by reason of the construction, maintenance and operation of an elevated railroad in proximity thereto.

Appellee's property in question is located on the west side of Ashland Boulevard, in Chicago, having an east frontage on said boulevard of twenty-five feet and a depth of 150 feet, the rear of the lot abutting on a 16½ foot alley. It contains a residence built in 1881, the main part of which 25x37 feet, is a two-story and attic building with basement, and the rear part consisting of two stories and a basement 20x33 feet. The south line of appellee's lot is about thirty-three feet north of the north line of appellant's right of way, and there is one house intervening. This right of way is fifty feet in width at that point, and it is said that appellant's railroad structure erected thereon and crossing the boulevard at right angles is at no point nearer to appellee's premises than thirty-three feet. This structure is an elevated railway, forty-four feet wide and about fourteen feet high, consisting of a steel superstructure resting on con-

326     APPELLATE COURTS OF ILLINOIS.

VOL. 100.] Metropolitan West Side Elevated R. R. Co. v. Goll.

crete foundations seven and eight feet deep and respectively 8x8 and 11x11 feet at the bottom. Upon this steel super-structure are laid four tracks and a connecting cross-over, all resting upon ties, and where the railroad crosses the boulevard these ties rest on a solid concrete floor specially pre-pared. The foundations for the railroad were put in during January, 1894, and the operation of trains began May 6, 1895. The number of trains daily is now said to be 1394, operated by electricity from a central power station.

Ashland Boulevard is an asphalted street 100 feet wide extending north and south. The declaration charges that appellee's property was worth $28,000 before the location, construction and operation of appellant's railroad, and that afterward the fair cash market value did not exceed from $8,000 to $10,000; and it is alleged that this depreciation was caused by such location, construction and operation, in permanently darkening the boulevard, interfering with easements of light, air and access, obstructing the view down the boulevard, precipitating oil, water and other substances upon the sidewalk under the structure, shaking the soil, operating trains with great noise, ringing of bells and rumbling of wheels, thereby disturbing the enjoyment of the property for residence purposes.

GARDNER & BURNS and FRANCIS W. WALKER, attorneys for appellant; WM. W. GURLEY, of counsel.

PAM, CALHOUN & GLENNON, attorneys for appellee; ALBERT E. DACY, of counsel.

MR. PRESIDING JUSTICE FREEMAN delivered the opinion of the court.

This is an action on the case to recover compensation for private property in the city of Chicago, no part of which has been "taken," but which it is alleged has been "damaged" for public use within the meaning of the constitutional provision upon that subject, by the construction and operation of appellant's elevated railroad.

It is stated in appellant's brief, in substance, that appellee made no attempt to prove and hence has abandoned any

claim for injuries alleged to have been caused by shutting off light, darkening the boulevard, obstructing access to the premises, dropping oil and water upon the boulevard or upon persons passing to and from the premises in question; that the only elements of damage for which, under the proofs, recovery is now sought, are such as are alleged to be caused by noise, by dust, by the unsightliness of the elevated structure, by interruption of view from appellee's premises along Ashland Boulevard, by vibration and by interruption of south breezes. Appellee, however, does not concede this, and specially insists that it appears from the evidence, and was more particularly disclosed by the jury's view of the premises, not only that the air from the south is interrupted, but that inasmuch as window shades in the parlor and second story have to be kept down to prevent passengers on appellant's trains from looking in, therefore light, air and sunshine are in fact excluded and the premises in controversy are thereby damaged.

We are told by appellee's attorneys that this court has not all nor the most important of the evidence before it upon which the verdict of the jury was based; that "its most important branch and unquestionably controlling feature was the view which the jury took of the property and the effect which the location, construction and operation of appellant's road had upon the premises as disclosed by that view."

This, however, is not a condemnation case in which such view is specially provided for by statute, and the view of the premises by the jury was not in the nature of evidence. Vane v. City of Evanston, 150 Ill. 616, was a special assessment case in which the jury were permitted to view the premises. It is there held that the only proper purpose of the view was as at common law "simply to enable the jury to understand the issue and apply the evidence. They were not authorized to consider any fact bearing upon the merits of the controversy derived from such view." Springer v. City of Chicago, 135 Ill. 552–566, was a suit for damages, caused by construction of a viaduct. It is there held not to be error, in the exercise of a sound legal discretion to

328 APPELLATE COURTS OF ILLINOIS.

VOL. 100.] Metropolitan West Side Elevated R. R. Co. v. Goll.

permit a view of the premises to enable the jury to obtain a better understanding of the issue presented. So in the present case, the view of the jury was allowable only for the purpose of giving a better understanding of the case. Such view was not evidence, nor to be treated as in the nature of evidence upon which to base or sustain a verdict. If not supported by the record, we are not authorized to indulge in the presumption that there was evidence outside the record upon which it was based.

The case at bar presents questions of importance in their bearing upon rapid transit in cities, and upon the rights of private owners who are more or less affected by the construction and operation of elevated roads. Elaborate briefs and arguments have been presented, and a determination of the questions involved seems to require reference to principles applicable. Generally stated the question is whether the injuries which it is claimed have been inflicted by the construction and operation of appellant's railroad, are of a nature such that appellee's property has been thereby "damaged" for such public use, so as to entitle her to compensation therefor, as provided by the Constitution.

Appellant contends (a) that injuries to appellee's property arising out of and unavoidably incident to the operation in a careful and skillful manner of a properly constituted railroad are *damnum absque injuria;* (b) that to recover, appellee must affirmatively show that the railroad was not properly constructed and is not operated in a careful and skillful manner; and (c) that the trial court erred in admitting evidence as to certain elements of damage for which there could be no recovery in any event, such as unsightliness of structure, obstruction of view along the street, interception of breezes, necessary noise, vibration or dust, and it is argued that a railroad company may use its own property in the same manner as a private individual and without other or different liability. There is no claim in this case that appellant's railroad has not been constructed and is not operated in a careful and skillful manner upon its own right of way, regularly and lawfully acquired.

As has been said by our Supreme Court, the decisions upon the general subject have not in this State been wholly harmonious. The difficulty, however, is not, perhaps, so much in stating the controlling principles, as in their application. In the present case, the appellant is operating an elevated road for the purposes of urban transportation. The purpose of its existence is to convey passengers rapidly and easily from point to point within the city limits. To do this it must run its line through densely populated and thickly built portions of the city. Its trains are operated by electricity, and there are no locomotive engines creating smoke, there is no ringing of bells and no whistling for crossings or stations. Thus, many of the annoyances which have been regarded as necessary incidents to the operation of ordinary surface railroads by steam are done away with. Whatever annoyances are caused by the new system are somewhat different in degree and kind, arising mainly from the location and elevation of the structure, the more frequent passing of trains and the noise incident thereto. The running of trains through crowded cities is not a new incident. Surface roads have done that and are still doing it in every city of the land. A railroad track laid by authority of law upon a city street, if properly constructed and operated in a skillful and careful manner was not and is not in law an actionable nuisance, owing to the fact that it is so constructed and operated by authority of law. The noise and confusion created by running engines and other incidents of operation, which were regarded as inseparable from the purpose and objects of railroads, formerly, had to " be borne by all living near them, and without hope of redress." (C. & E. I. R. R. Co. v. Loeb, 118 Ill. 203–210.) Thus the common law right of action against one maintaining a nuisance was taken away by a statutory permission for the construction and operation of railroads. Damage thereby caused to neighboring property owners was without remedy in this State until by virtue of the constitutional provision made in 1870 that " private property shall not be taken *or damaged* for pub-

330    APPELLATE COURTS OF ILLINOIS.

Vol. 100.] Metropolitan West Side Elevated R. R. Co. v. Goll.

lic use without compensation," such damages having again become recoverable as at common law. The action for damages in such a case must include the entire damage, past, present and future, if damage there be, and all such damages must be assessed in the one action, as in a condemnation proceeding. C. & E. I. R. R. Co. v. Loeb, *supra.*

In C., M. & St. P. Ry. Co. v. Darke, 148 Ill. 226–232, Mr. Justice Bailey says:

" It can not be denied that the decisions of the courts upon the question whether, in estimating damages to property not taken, the noise, confusion and disturbance caused by the engines and cars used in the operation of the railway can be considered, are somewhat conflicting. Some of the decisions seem to hold that the employment of locomotive engines, the running of trains and the noise and confusion thus caused are the necessary and lawful incidents of the operation of railways, and therefore the damages to lands abutting upon or near the railway thereby caused, are *damnum absque injuria*, and are therefore incapable of affording any ground for the recovery of damages. But we are not prepared to coincide with that view. It can not be doubted that at common law, mere noise in the immediate vicinity of the premises, and especially of the dwelling house, of a land owner, may be of such a character as to constitute an actionable nuisance, remediable by an action on the case for damages, or by injunction."

Noise and disturbance, therefore, of such a character as at common law would be actionable, is an element of damage for which recovery can be had in a suit like the one at bar.

It must appear, however, that private property is actually damaged. What is embraced in the word "property," as used in the constitution, is not a subject of legitimate contention. As is stated by appellee's attorneys, it includes not merely the *corpus*, but the *jus* also; that is to say, there are certain rights which go with property, and pertain to the use which may lawfully be made of contiguous and surrounding areas, such as the right of support for the soil, to light and air, and the right to be undisturbed by the unreasonable use of neighboring property. (Lewis on Eminent Domain, 2d Ed., Sec. 54, p. 53.) There is a "taking

of property within the spirit of the law," when its use, benefit or enjoyment are directly and physically interfered with. (West Side Elevated Railroad Co. v. Springer, 171 Ill. 170, 179.) In the leading case of Rigney v. City of Chicago, 102 Ill. 64, 77, property is defined as " that dominion, or indefinite right, of user and disposition which one may lawfully exercise over particular things or subjects, and generally to the exclusion of all others." For damage to private property, as thus defined, when inflicted for the use of the public, recovery may be had.

The Rigney case, *supra*, contains a full and instructive consideration of the general subject. Prior to that decision, says the court, " it is believed that no general rule has yet been laid down by which the cases generally may be harmonized." Under the old constitution, which allowed compensation only for property " taken," the rule was established that any direct physical injury, such as overflowing, or casting sparks and cinders upon private property, was a " taking" to the extent of the injury so caused. The addition of the word " damaged " in the Constitution of 1870 created a new rule whereby compensation may be given, although there has been no direct physical invasion of the *res*, provided direct physical injury has been inflicted upon the right of user, enjoyment and disposition of the *res*. The court, in the Rigney case, thus states the rule :

" Under the present constitution it is sufficient if there is a direct physical obstruction or injury to the right of user, or enjoyment, by which the owner sustains some special pecuniary damage in excess of that sustained by the public generally, which, by the common law, would, in the absence of any constitutional or statutory provisions, give a right of action."

The acts of a corporation so " taking " or " damaging " private property may be perfectly legal and within its powers, and yet it may be liable to make compensation for property so " damaged," as well as for property actually taken, in whole or in part. " In all cases," says the court, " to warrant a recovery, it must appear there has been some direct physical disturbance of a right, either public or pri-

332　　Appellate Courts of Illinois.

Vol. 100.] Metropolitan West Side Elevated R. R. Co. v. Goll.

vate, which the plaintiff enjoys in connection with his property, and which gives it additional value, and that by reason of such disturbance he has sustained a special damage with respect to his property in excess of that sustained by the public generally." A merely sentimental disturbance is not an element of injury for which recovery can be had. A railroad may disturb an æsthetic sensibility, and thus impair the enjoyment which occupants of private property and the public generally, formerly had, and still not impair any legal right nor give ground for recovery of damages, although such disturbance may have some effect in depreciating the market value of private property. It must appear that there has been an injury, direct and physical, or " really peculiar " to the right of user and enjoyment. City of Chicago v. Spoor, 190 Ill. 340–348; Fairbank Co. v. Nicolai, 167 Ill. 242–248.

The court, in the Rigney case, did not undertake to state in full every feature of the rule which determines the nature and character of the injuries by which private property is to be regarded as " damaged," so that recovery can be had therefor. As we understand the matter, in the light of that and subsequent cases, the right of recovery exists where, for the benefit of the public, private property has been specially, even though lawfully damaged—that is, in a way not common to the public, and hence in excess of the damage sustained by the public generally; and such damage must be occasioned by a direct physical disturbance of a property right, of a character for which redress could have been had at the common law, if such disturbance had not been authorized by statutory enactment. It is not enough that the damage exceeds merely in amount that sustained by the public generally. It must be greater in kind—that is, greater by reason of its peculiar nature; for if only greater in degree no recovery can be had. City of East St. Louis v. O'Flynn, 119 Ill. 200; Gilbert v. Greeley S. L. & P. Ry. Co., 22 Pac. Rep. 814; Parker v. Catholic Bishop of Chicago, 146 Ill. 158; City of Chicago v. Burcky, 158 Ill. 103.

There is a class of injuries for which no recovery could be had at common law, and for which no recovery can be had

to-day, against either private persons or public corporations. Says Mr. Justice Mulkey, in the Rigney case: "While it is clear that the present constitution was intended to afford redress in a certain class of cases for which there was no remedy under the old constitution, yet we think it equally clear that it was not intended to reach every possible injury that might be occasioned by a public improvement. There are certain injuries which are necessarily incident to the ownership of property in towns or cities, which directly impair the value of private property, for which the law does not, and never has, afforded any relief. For instance, the building of a jail, police station or the like, will generally cause a direct depreciation in the value of neighboring property. Yet that is clearly a case of *damnum absque injuria.* So as to an obstruction in a public street—if it does not practically affect the use or enjoyment of neighboring property, and thereby impair its value, no action will lie." We quote this passage from that opinion at some length, because appellee's attorneys contend the language so used must be taken to mean that while no recovery can be had from a municipal corporation for so injuring or depreciating private property in the exercise of police power, relief may be had from other corporations, such as a railroad company, for every injury. The principle has no such narrow limitation. Improvements by which certain injuries may be inflicted upon private property, for which no recovery can be had, are not confined to injuries caused by a municipal corporation in the proper exercise of police power. If one suffers injury from such exercise, he is regarded as compensated therefor by his share in the general public benefit. (Frazer v. City of Chicago, 186 Ill. 480.) But corporations, as well as private persons, have a right to the reasonable use and enjoyment of their own private property; and if in such use, without negligence or malice, a loss unavoidably falls on a neighbor, the latter can not, as a general rule, recover damages therefor. There are many kinds of structures which a corporation, in its private capacity, like a private person, may lawfully erect upon its own lands, and which, from

334      APPELLATE COURTS OF ILLINOIS.

VOL. 100.] Metropolitan West Side Elevated R. R. Co. v. Goll.

the mere fact of their construction, cause depreciation in the value of neighboring property.   Such may be the result where a private owner, individual or corporate, puts up a building, which, by its mere erection, shuts off the sunlight and the south breeze and the view from a neighbor's house. It is said, in Penn. R. R. Co. v. Marchant, 119 Pa. State, 541 : " No principle of law is better settled than that a man has the right to the lawful use and enjoyment of his own property, and that if, in the enjoyment of such right, without negligence or malice, an inconvenience or loss occurs to his neighbor, it is *damnum absque injuria.*   This must be so, or every man would be at the mercy of his neighbor in the use or enjoyment of his own."   No reason is perceived why the principle is not as applicable to a railroad company, with reference to its private property, as to a private person. But when either a private person or a corporation so uses his or its property as to cause damage actionable at common law, then either or both are liable therefor, and the corporation is not protected from such liability by the fact that it may have been authorized by statutory enactment to do the things which occasion such actionable damage.   There is, it is true, an apparent distinction drawn between private persons and corporations, in the opinion delivered in the Lake E. & W. R. Co. v. Scott, 132 Ill. 429, on p. 463, where it is said, in substance, that a corporation may be liable under facts such as appeared in that case, even though an individual doing the same thing on his private property might not be, for the reason that an individual can not legally take or damage private property for public use, while a railroad company can, if it makes compensation. That statement or dictum is limited by the words " as applied to this case."   When, as in that case, a corporation takes a portion of the property of a private person, it may be made to pay damages for injuries thereby caused to the right of use and enjoyment of the remainder, even though the injuries may not be such that an individual doing the same things upon his own property would be liable therefor.   As applied to the facts of that case, the proposition is in accord

with well recognized principles. In condemnation proceedings or actions for damages in the nature of such proceedings, where part of the property is taken, compensation is allowed for damages to the remainder of the tract upon a more liberal basis than in case of property no part of which is taken. (Randolph on Eminent Domain, Sec. 136.) But as a general rule no distinction exists between the right of a railroad company, in its private capacity, to the same use and enjoyment, without negligence or malice, of its own property, lawfully acquired, as a private person has; and if in such use an inconvenience or loss occurs to neighboring property, it is in like manner *damnum absque injuria*. This is the rule adopted by the Supreme Court of Georgia in Peel v. City of Atlanta, 85 Ga. 138, cited in appellant's brief, where it is said, speaking of a constitutional provision identical with our own, that its effect is not to authorize compensation, in all cases where property may be injured by public works, but only where enjoyment of some right is interfered with, rendering the property less valuable; and that "the test is, would the injury, if caused by a private person, without authority of statute, give the plaintiff a cause of action against such person? If so, then he is entitled to compensation, notwithstanding the statute which legalizes the damaging work" (citing, among others, the Rigney case, *supra*). And it is further said, "Where no land of the plaintiff is taken, and no other right infringed, he is not entitled to compensation on the ground that the privacy of his residence is destroyed." To the same effect are Penn. R. R. Co. v. Marchant, 119 Pa. State, 541, *supra*, and what is said in C., M. & St. P. Ry. Co. v. Darke, 148 Ill. 226–232, *supra*, as follows: "If the noise, confusion and disturbance caused by the defendant's engines and cars are such as would, in the absence of legislative authority, have constituted an actionable nuisance, the existence of such authority in no way relieves them of their damaging effect, so as to take away from property owners their right to redress, or so as to convert what was before actionable into a case of *damnum absque injuria*." A distinction, not

336 . APPELLATE COURTS OF ILLINOIS.

VOL. 100.] Metropolitan West Side Elevated R. R. Co. v. Goll.

wholly fanciful, may be said to exist between property damaged for public use, directly and physically, and property depreciated by the public use of neighboring property, without negligence. For the former, recovery can be had by the express terms of the constitution, but the latter is frequently *damnum absque injuria*, as it would be if, by the mere erection of a business block in a residence neighborhood, adjoining property is depreciated.

We are referred in the briefs filed herein to a large number of cases where expressions are used thought by counsel to sustain conflicting views for which they contend. It will be found, however, that the cases on the whole are not inharmonious, whatever may be said of occasional expressions. In C. & W. I. R. R. Co. v. Ayers, 106 Ill. 511–578, a judgment was sustained for damages alleged in the declaration to have been occasioned by the construction and operation of a railroad by municipal authority in a public street extending in front of plaintiff's land 232 feet, whereby it was charged ashes, dust, cinders, smoke, etc., were thrown upon the land, access to it cut off, and the owner's ordinary use of the street as a highway prevented. It is there held that, to recover, an individual must show that he has " been damaged specially and individually in a manner not common to the public," an that for public damage or inconvenience no recovery can be had, following the Rigney case, *supra;* but that as the plaintiff had sustained damages "individually separate and distinct from the disturbance of the public easement, an injury to his private property amounting to a substantial damage," he could recover compensation for the damage thus sustained In L. E. & W. R. R. Co. v. Scott, 132 Ill. 429, heretofore referred to, the railroad had taken without previous purchase or condemnation a small part of the plaintiff's land for its right of way. The railroad ran along one side of a highway upon the opposite side of which lay the main body of the farm. Damages were recovered for injuries to land not taken, it appearing that the owner sustained "some special pecuniary damages in excess of that sustained by the general public. In that case there had been an actual

physical taking of a strip of plaintiff's land without previous condemnation or compensation, and the suit, as is said in C. & E. I. R. R. Co. v. Loeb, 118 Ill. 203, "may be regarded as in the nature of one kind of condemnation proceedings." The rule of damages, under the facts of that case, is as stated in Randolph on Eminent Domain, Sec. 936, as follows: "The rule that where part of a tract of land is acquired for public use the whole is taken, in the sense that compensation must be paid for certain damages to the remainder, is widely approved. Injuries to the remainder of a tract are rarely independent injuries, but are simply elements which go to swell the amount of compensation. In determining those elements a more liberal rule is frequently adopted than that which governs the definition of liability in the case of damage to property untouched by the works." The case of Penn Mut. Life Ins. Co. v. Heiss, 141 Ill. 35–61, is cited by appellee's counsel. It is there said it is not an open question in this State that adjacent lot owners may recover damages occasioned by the building and maintenance of a railroad in the streets of a city— "damages not common to property in general, resulting to abutting property from the appropriation of the street." It appears from these and other cases that, however applied, there is no substantial difference of opinion as to the rule itself.

It is evident from what has been said that in this State recovery for damages caused by the construction and operation of a railroad is not wholly dependent upon whether the road is properly constructed and carefully and skillfully operated. Such care and skill will doubtless diminish the chances and extent of damages. But if by such construction and operation private property is damaged for public use, within the meaning of the constitution as above stated, recovery is not barred because of the care and skill used in such construction or operation. The damage must be caused for public use, however, as distinguished from such private use as a railroad company, no less than an individual, may lawfully make of its own land.

338    APPELLATE COURTS OF ILLINOIS.

VOL. 100.] Metropolitan West Side Elevated R. R. Co. v. Goll.

The distinction between damages common to the public and the property owner, and those special to the latter, has not always been clearly defined.    It is illustrated by Chief Justice Shaw in Proprietors, etc., v. Nashua & L. R. R. Co., 10 Cush. 385, p. 390, as follows:  "It must be a damage different in kind, and not merely in degree; not that one sustains an injury greater than that of others, but one special and peculiar to himself.   If one places a wall across a highway, it is a public nuisance for which an indictment would lie.   But if one riding in the night, not knowing or seeing it, should run against it, and injure his person or property, this would be peculiar to himself and special, and an action would lie."

Bearing in mind that the damage must be different in kind and not merely in degree, and that besides being special it must be of a character such that, but for the statute authorizing the act of the railroad complained of, redress could have been had therefor at common law, it remains to consider whether the evidence in this case shows the damages claimed by appellee to be such as to sustain the judgment.

Appellee's counsel claim that recovery may be had for " consequential" damages.   This is no doubt true in a proper sense, but not in every sense, and the use of the term may readily mislead.   As we have seen, not every injury which is a consequence of the construction and operation of a railroad is actionable.   While there are certain elements of injury for which recovery can be had, it is still true, as said in City of Chicago v. Stock Yards Co., 164 Ill. 224–235, and cases there cited, that some " consequences of the construction and use of railroads must be borne by all living near them, without complaint and without hope of redress."   As said in City of Chicago v. Burcky, 158 Ill. 103, 109, "there is less difficulty in determining what the law is, than in making a proper application of the law to the different cases that may arise." In the case at bar, evidence was introduced to show that appellee's property was damaged by the existence of the structure over which the trains run; because of its alleged

unsightliness; by the cutting off, where the structure spans the street, of the view along the boulevard from appellee's house; the interception of breezes from the south; and by the necessity of keeping curtains down to prevent passengers on the elevated trains from looking into certain rooms. It is clear, we think, that these alleged injuries are sentimental in character, or are shared in common with the general public. The alleged interception of breeze and sunlight by that portion of the structure standing on appellant's own property, does not appear to be different from that ordinarily caused by an entirely proper use of his own land by a private person building thereon. That portion of the structure which spans the street, does not interfere directly nor indirectly, so far as appears, with ingress and egress to and from appellee's premises. It is possible that some injury is sustained by appellee in common with the general public from the crossing of the boulevard by such elevated structure. This injury may be slight because of the elevation of the tracks and the care taken in building the structure over the boulevard, but it is doubtless real, if it renders the street less safe for use of horses for traffic and otherwise, or impairs the beauty of the street. For such injury, however, a private owner can not recover because the damage is to a right common to the public; and it is only for substantial damage, distinct and separate from the disturbance of the public easement, that recovery can be had. Proprietors of Locks and Canals v. Nashua & L. R. R. Co., 10 Cush. 385–391, *supra*. In that case it is also said, that the mere diminution of market value of a house lot, not crossed or touched by a railroad so as to damage or endanger it physically, is not a proper element for consideration in awarding damages; and that " the objections to the consideration of this diminution of market value as a substantive cause of loss are that it is too remote and consequential. The law does not propose to grant indemnity for all losses occasioned by the laying of a railroad."

The other elements of alleged damage in this case are, according to appellee's testimony, noise, dust and vibra-

340     Appellate Courts of Illinois.

Vol. 100.] Metropolitan West Side Elevated R. R. Co. v. Goll.

tion. There has been some conflict of opinion as to whether necessary noise incident to the operation of a railroad is an element of damage for which recovery can be had. (See Beeseman v. Penn. R. R. Co., 50 N. J. L. 235–238.) Such ordinary and necessary noise is generally considered to affect only a public and common right for which no private action will lie. But it has been held in this State that mere noise made by a railroad company in the immediate vicinity of a dwelling house "may be of such a character as to constitute an actionable nuisance" at common law. (C., M. & St. P. Ry. Co. v. Darke, *supra;* C., P. & St. L. Ry. Co. v. Leah, 152 Ill. 249.) The declaration in the case before us states that "the said cars and motors so running on said railroad track have been operated with great noise, ringing of bells and rumbling and squeaking of wheels and other noises connected with the running of trains on the elevated railroad so as to continually disturb and destroy the peace and quiet on said premises." Whether any unusual noise, of such a character as would be actionable at common law and damaging to appellee's premises exists in this case is to be determined by the evidence. But it must be something unusual, causing peculiar damage to appellee of a different kind from that sustained by the general public. In both the Darke and Leah cases above referred to, there were peculiar conditions affecting the plaintiff's property. In the Darke case there were opposite the plaintiff's property, not only the main tracks, but several other tracks and switches, an engine house and water tank with a stationery engine, and locomotives standing there when not in use. The railroad company asked an instruction that the plaintiff could not recover for damages alleged to have been caused by any noise, confusion or disturbance, and the court said it was properly refused. In the Leah case also, the location of the railroad was such that the plaintiff was "permitted to prove the special disadvantages and annoyances which interfered" with the use and benefit to which the law entitled him. But we are not referred to any cases in this State which hold that the necessary and

ordinary noise of trains merely passing on a railroad operated without negligence and with the most approved appliances, the noise from which, it may be, annoys an individual owner near by in a greater degree, but inflicts no injury differing in kind from that sustained by the general public, is an element of damage for which compensation can be had.   If one person whose premises are rendered less enjoyable because of the ordinary noise of passing trains operated by electricity can recover therefor, no reason is perceived why any one similarly affected by electric trains, whether surface or elevated, anywhere in the city, may not in like manner recover.   If so, the operation of such roads would be impossible.   Suits by the thousands would follow and their use would have to be abandoned. Elevated roads, like street railroads, do not impose an additional servitude.   Doane v. Lake St. El. R. R., 165 Ill. 510.

Vibration, the jarring of houses by heavy wagons or omnibuses passing along the street, is not an unusual incident of city life.   For such vibration, so caused, no recovery could ordinarily be had.   It is a result of the public use of the street.   Whether unusual vibration, specially damaging to appellee's property, is caused by the operation of appellant's trains, is to be determined by the evidence.   (L. St. El. R. R. Co. v. Brooks, 90 Ill. App. 173–189.)   The same is true also as to whether the operation of appellant's road specially injured appellee's premises by throwing dust thereon.   It is a question of fact.

It is claimed by appellee that the measure of damages in a suit of this character is the difference in value of the property before and after the acts complained of.   But this is not a condemnation proceeding to ascertain the compensation where property is to be taken or damaged for public use.   Where it is to be so damaged the measure of damages has been said to be the difference between the value before, and what it will be after the construction of the road; in other words, it is the depreciation to be caused by the construction of the road.   But after such construction has occurred, mere difference in value may not be the true

measure of the damage caused by the road. Causes for which the railroad is not in the least responsible, such as general depreciation in market values of real estate, shifting of centers of population, the inroads of business houses, etc., may have contributed to the difference in values.

We can not undertake to analyze and distinguish the large number of cases cited by the attorneys herein, nor extend this opinion by considering in detail the alleged errors in the admission or rejection of evidence and the instructions. Complaint is made concerning several matters which will doubtless be remedied upon another trial, including the alleged conflict in the instructions. Perhaps this last objection may be obviated, if counsel submit a less number, stating the law applicable clearly and concisely. It appearing that certain evidence was erroneously admitted relating to alleged elements of damage for which the law allows no compensation, the judgment of the Circuit Court must be reversed and the cause remanded.