# FRANK O. JOHNSON
## *v.*
## STATE OF ILLINOIS.

*Opinion filed May 22, 1914.*

1. NEGLIGENCE—*when State liable for.* Claimant's property, located across the street from the stone quarry at the Illinois State Penitentiary, was damaged by blasting in the quarry. *Held,* that claimant is entitled to an award on account of such damage to his property.

2. JURISDICTION—*statute as to this class of claims.* In this claim, the Court's jurisdiction to hear "all claims against the State for taking or damaging private property by the State for public purposes in the construction or for use of any State institution," is called in question.

3. DAMAGES—*measure of.* Where the injury is permanent, only one recovery may be had, and the measure of damages is the depreciation in value, occasioned and to be occasioned by the maintenance of the nuisance. (*C. & E. I. R. R. Co.* v. *Loeb,* 118 Ill., 203), cited by the Court.

4. EMINENT DOMAIN—*compensation for property taken by.* Private property cannot be taken or damaged for public use without just compensation.

Lagger & Blatt, and Brown, Hay & Hand, for Claimant:

The Court of Claims Act contemplates compensation not only for the physical taking of property, but for damages resulting from public use.

"The measure of damages which is to be adopted is the same as though a direct proceeding by condemnation had been brought to determine the amount of damages."

*Aldis* v. *Union Elevated R. R. Co.,* 203 Ill., 567.

"If plaintiff was entitled to recover at all, as he was confined to a single action, he ought to recover whatever damage he has sustained by the operation of the plant—both present and future damages."

*Hyde Park Light Co.* v. *Porter,* 167 Ill., 276.

"The allegation of injury to the market value was an allegation of permanent injury. Depreciation of market value is not measure of damages for temporary injury which may be removed or abated."

*North Shore St. Ry. Co.* v. *Payne,* 192 Ill., 239.

P. J. Lucey, Attorney General, and Arthur R. Roy, Assistant Attorney General, for State.

Claimant is a resident and property owner in Joliet, and claims to have sustained damage to his residence because of the maintenance and operation by the State as a part of the penitentiary, of a stone quarry, immediately adjacent to his residence. In the conducting of the stone quarry the State has resorted to blasting operations, as a result of which, stones were cast upon claimant's property and his building sustained damage, all of which he claims causes depreciation in the value of his property.

In this case, the Court is relieved of part of the duties ordinarily imposed upon it, in that, the question of liability of the State for damage has been agreed upon by the parties and the State admits its liability. Both claimant and the State seem to have taken the evidence on the theory, that the measure of damage was depreciation in the value of the property, and not physical depreciation, but the State now defends on the question of the measure of damage, and argues, that the true measure is the physical depreciation sustained within two years of the time of the filing of this claim.

This Court, by the law to which it owes its existence, is called upon to determine "all claims against the State for taking or damaging private property for the State, for public purposes in the construction or for use of any State institution." We have satisfied ourselves, aside from the admissions of counsel, that this statute is directly applicable to the matter before us, in that, this is a claim for the damaging of private property for public purposes, for use of the penitentiary at Joliet, which is a State institution.

Claimant made a contract to purchase the property in question, on October 17, 1902, and acquired title by deed on May 1, 1906. He paid three hundred ($300.00) dollars for the lot, and erected a house and other improvements in 1906, at an expenditure aggregating about twenty-five hundred ($2,500.00) dollars. At the

time claimant purchased his property, there had been a quarry on the penitentiary site, that was not being operated, and actual active operations in the quarry did not commence, until after claimant had started to build his house. There has been blasting going on since 1907, and it has continued at intervals down to the time of the filing of the claim. Stones have been thrown through the roof of the house, cistern cracked, foundation of the house cracked, shingles loosened, windows blown out and broken, plastering cracked, and claimant has been put to many inconveniences.

Claimant's property, it is apparent from the record, is not most advantageously situated for residential purposes. In addition to the quarry complained of, which is to the south of his residence, the steel mills lie to the west, and interurban and local street car lines are in the front of his house, and according to his testimony, there is a great deal of noise, independent of the noise in the quarry. Claimant himself apparently lays his claim to damage to the fact, that the stones from the blasts caused actual physical damage, and states that the work in the quarry is going away from his residence, and that, if it were not prosecuted at the time of taking the testimony that, in his opinion, his property would be as good for residence purposes as it was before the blasting commenced. He stated further, that the penitentiary people have done practically all of the repairing that has been done. It is apparent also from the evidence, that in addition to the blasting in the quarry, that some place on the premises seems to be used as a garbage crematory, without any particular regard being had for the disposition of the odor of the burning garbage, although this is not specifically set forth in the declaration as an element of damage.

Considerable testimony has been offered on the question of depreciation in value of the property, and on the question of damages. Very little of it would pass as expert testimony, and it is very largely made up of

the testimony of friends and neighbors of claimant, or people interested to a greater or less degree in the ultimate outcome of this case, and in the application of the principles as to the question of damages in this particular case.

On the question of the measure of damages, a similar question has been passed upon by the Commission of Claims, in *Fairbanks* v. *State*, 1 C. of C. R. 1, wherein the Commission, on page 4, stated:

"We think the rule well established, that where the obstruction, as in this case, was lawful, it could not be treated as a nuisance, for that would imply the right to have it abated. Evidently there could be but one satisfaction for the injury sustained, and that would be for the permanent injury to the land caused by the obstruction of the river."

In that case is cited the case of *Chicago & Eastern Illinois R. R. Co* v. *Loeb*, 118 Ill., 203, which is a well considered and leading case on the principles herein involved.

Adopting the language of that case as applicable to the case at bar, we hold, "that in an action brought for deterioration in the value of real estate, from a nuisance of a permanent character, all damages for past and future injury to the property may be recovered, and that one recovery in such action will be a bar to all future actions for the same cause." In this case, as in the last cited case, we might also say: "The cause of damage here is not a nuisance proper," though the line of reasoning, whether or not it be actually a nuisance in law, is the same. We are not prepared to hold, that the operation of a stone quarry as an adjunct of the penitentiary is in law, a nuisance, yet, following the language of that opinion, "we think it to be within the true intent and meaning of this provision as to damage (the constitutional provision that private property shall not be taken or damaged for public use, without just compensation), that there should be but one proceeding for recovery of damage,

in which there should be recovery for the entire damage, past, present and future; that it should be similarly regarded, in this respect, as the provision in regard to the taking of property, where there is but one proceeding, and an assessment of compensation and damages once for all.''

In view of the fact that this stone quarry was not being operated as such and in the manner complained of at the time claimant bought his property and made his improvements, but on the contrary all the damage sustained by reason of the operation of the quarry was sustained since such time, there must be a recovery by claimant in this case and the measure of damages is the depreciation, if any, in the fair cash market value of the premises.

Witnesses for claimant, fix upon varying figures as their estimates of damages, and differ as to the reasons for their estimates of the damages as fixed by them. Two witnesses place the damage at fifty per cent of the original value, due to the fact, that there is a quarry, and the fact that stones are thrown on claimant's property. Claimant himself, includes in his estimate of damage, the fact that property in the vicinity is not improving as regards price, because of the location of the quarry. On the part of the State, one witness, a real estate agent, placed the value of the property, at twenty-three hundred ($2,300.00) dollars, and estimates the damage at not more than three hundred ($300.00) to five hundred ($500.00) dollars, and another witness for the State places the damage at five hundred ($500.00) dollars. Both witnesses for the State are real estate men, and claimant's witnesses are his neighbors and friends or people interested in the result of this case.

We have carefully examined the evidence on the question of damage, and conclude, that claimant should have a recovery from the State of Illinois, as his just damage, in the sum of seven hundred fifty ($750.00) dollars.