The Meredosia Lake Drainage and Levee District, Appellee, v. The Sanitary District of Chicago, Appellant.

Gen. No. 8,565.

Heard in this court at the
Opinion filed

WILLIAM ROTHMANN, THOMAS F. DONOVAN, JOSEPH McGARRY and WILLIAM H. DIETERICH, for appellant.

HAIRGROVE & ABSHER and A. M. FITZGERALD, for appellee.

MR. JUSTICE SHURTLEFF delivered the opinion of the court.

This was a suit in trespass on the case. Praecipe was filed March 30, 1927; summons was served April 6, 1927, returnable to the October, A. D. 1927, term of the circuit court of Cass county.

The suit was brought by The Meredosia Lake Drainage and Levee District, for convenience, hereinafter referred to as "appellee," against The Sanitary District of Chicago, hereinafter referred to as "appellant," to recover damages for injuries to the works and property of appellee caused by the flood waters of the Illinois River during the years of 1922 and 1926.

The original declaration, consisting of three counts, was filed on September 23, 1927. The first count of the original declaration avers that the appellee was a duly organized drainage and levee district by an order of the county court of Cass county entered on September 2, 1903; that the description and boundary of the drainage district was fixed by such order; that pursuant to said order appellee constructed its levees, interior drainage ditches, tile drains, pumping stations and other works for the purpose of protecting the farming territory in said district from overflow from the Illinois River and has maintained said works from thence hitherto;

That the appellant is a municipal and public corporation, organized and existing under and by virtue of the laws of the State of Illinois, and as such corporation appellant is vested with certain powers under and by virtue of the statutes of the State of Illinois cre-

ating said corporation and the acts amendatory thereto;

That in and among other things provided by the statute it was provided that the appellant should be liable for all damage to real estate within and without said district which should be overflowed or otherwise damaged by reason of the construction and enlargement or the use of any channel;

That the appellant is the owner of and using and operating a system of channels, drains, ditches, outlets and other improvements for the flow of water and sewage and for the development of electrical power and energy; that in the use of the same the appellant daily withdraws vast quantities of water from Lake Michigan, the Chicago and Calumet Rivers, and discharges said waters together with the sewage of the district into artificially built channels, canals and ditches into the Des Plaines River and thence into the Illinois River; that in the ordinary course of nature none of the waters of Lake Michigan, the Chicago River, the Calumet River, or the waters from their tributaries or watersheds ever reached or flowed into the Illinois River;

That during the five years just preceding the filing of this suit a much larger and greater quantity of water and sewage has been daily so diverted than was turned therein or diverted by it for the period preceding said five years last past; that the appellant continued to flow and caused to be flowed and diverted into the Illinois River as aforesaid a quantity of water and sewage in excess of 10,000 cubic feet per second. The declaration then avers that in and during the month of April, 1922, the appellant in the use and operation of said sanitary district wrongfully discharged larger and greater quantities of water and sewage into the Illinois River than it had previously discharged; that the quantity discharged exceeded

10,000 cubic feet per second, thereby causing said Illinois River to rise to a greater height than usual and to overflow its banks at and near the works of appellee; that said quantities of water and sewage caused injuries complained of.

The second count by reference adopts the averments as to the violation of duty of the appellant averring that "for a further cause of action the appellee avers that by reason of the wrongful acts of the appellant aforesaid," during the month of October, 1926, the river did overflow its banks and injured the works of the appellee.

The third count adopts the averments as to violation of duty by the appellant averring that, "for a further cause of action the appellee avers, that by reason of the wrongful acts of the appellant aforesaid, to wit: During the years of 1922 to and including 1926, the appellee was compelled to and did expend and use a greatly increased amount of time, fuel, energy, extra help and money in pumping and removing the excessive quantities of water from said appellee District, as the result of said increased flow and diversions aforesaid." The *ad damnum* is laid at $80,000.

On December 1, 1927, the appellant filed the general issue and five special pleas, the first denying the ownership and right of possession of appellee to the lands described in the declaration; the second averring the overflow was caused by the construction of reclamation works, over which appellant had no direction or control along and below the lands of the appellee; the third averring the works of appellee itself caused the Illinois River to rise to the elevation which caused the injury; the fourth, the general plea of the statute of limitations, and the fifth a special plea of the statute of limitations.

The declaration and pleas followed generally the declaration and pleas of the case of the *Coal Creek*

*Drainage and Levee District v. Sanitary District of Chicago*, 336 Ill. 11, and the case of *George B. Christie v. Sanitary District of Chicago*, 256 Ill. App. 63, and based the cause of action upon unreasonable excess flowage and an increased operation of the canal of the appellant in the five years immediately prior to the commencement of the suit over that of the previous period, which cases were pending in the Supreme and Appellate Courts.

After the opinion was filed by the Supreme Court in the *Coal Creek* case, and a rehearing had been denied, appellee on October 7, 1929, asked leave and filed its amended declaration consisting of two counts.

Both counts of the amended declaration follow the first count in the original declaration in the matter of the averments of the organization of the district, the boundary, the construction of the works of appellee, the appellant being a municipal corporation organized and existing under and by virtue of the laws of the State of Illinois and being vested with certain powers under and by virtue of the statutes of the State of Illinois, the construction of the works of appellant and the discharge of water and sewage into the Illinois River, omitting the averment, "that in and among other things provided by statute that the appellant should be liable for all damages to real estate within and without said district which should be overflowed or otherwise damaged by reason of the construction and enlargement or the use of any channel ditch, drain outlet or other improvement."

Said first count of amended declaration then avers that in and during the month of April, 1922, the appellant in the use and operation of said system of channels, etc., discharged large quantities of water and sewage into the Illinois River; that the amount so discharged exceeded 6,000 cubic feet per second, causing the river to rise to a greater height than it otherwise

would naturally have risen to and to wash over and break through the levees of appellee and overflow and fill up the interior ditches, tile drains, pumping stations and other works of the appellee.

There is omitted from both counts of the amended declaration the following averment contained in the original declaration: "That during the five years just preceding the filing of this suit a much larger and greater quantity of water and sewage has been daily so diverted than was turned therein or diverted by it for the period preceding said five years last past."

Then follows the averment in said first count that in the year of 1922 the appellee used an increased amount of time, fuel, energy, extra help and money in pumping and removing the excessive quantities of water and sewage and that appellee was compelled to increase its pumping capacity. The *ad damnum* is laid at $80,000.

The second count is a restatement of the averments of the first count with the exception that it avers, that in October, 1926, the appellant discharged large quantities of water and sewage into the river; that the quantity discharged exceeded 6,000 cubic feet per second causing the river to rise to a greater height than it otherwise would naturally have risen to and to wash over and break through the levees of appellee and overflow and fill up the interior ditches, tile drains, pumping stations and other works of the appellee.

A general and special demurrer was filed to said amended declaration, which demurrers were overruled.

The appellant filed the general issue and six special pleas to said amended declaration. The pleas were numbered from one to seven inclusive. The appellee filed replications to the first and fifth plea of appellant, said first plea being the general issue and the fifth plea being the general plea of the statute of limitations;

appellee filed demurrers to the second, third, fourth, sixth and seventh pleas. The demurrer to the second plea, which was a plea denying ownership with the right to possession, was sustained. The demurrer to the third plea, which averred that the increased elevation of the stage of water of the Illinois River which caused the injury was caused by the construction of various levees and embankments by various drainage districts over the construction of which the appellant had no authority or control, was sustained. The demurrer to the fourth plea, which averred that the injury was produced by the construction of the works of appellee, was sustained. The demurrer to the sixth plea, which was a special plea of the statute of limitations, was sustained.

The appellant's seventh plea was a special plea of the statute of limitations and avers the following: That the Sanitary District was organized and formed pursuant to an act passed by the Illinois Legislature, entitled, "An Act to Create Sanitary Districts and to Remove Obstructions in the Des Plaines and Illinois Rivers," Cahill's St. ch. 42, ¶ 337 *et seq.*, which act was approved and in force July 1, 1889; that pursuant to said act the Sanitary District was given the power to construct one or more main channels for disposing of the drainage of said district, including the sewage; that said act provided that if any Sanitary District organized under the act should construct any channel or outlet which would cause a discharge of sewage into or through any river or stream of water beyond or without the limits of such Sanitary District constructing the same such channel should be of sufficient size and capacity to produce a continuous flow of at least 200 cubic feet per minute for each 1,000 of the population of the district drained thereby, and that the same should be kept and maintained of such size and in such condition that the water thereof should be

neither offensive nor injurious to the health of the people of the State; that said district should at any time any sewage was turned into or through such channel or channels turn into such channel or channels not less than 20,000 cubic feet of water per minute for every 100,000 inhabitants of said district and should thereafter maintain the flow of such quantity of water; that if any channel was constructed under the provisions of said act by means of which the water of Lake Michigan should be caused to pass into the Des Plaines or Illinois River such channel should be constructed of sufficient size and capacity to produce and maintain a flow of not less than 20,000 cubic feet of water per minute for every 100,000 of the inhabitants of said district, if said district exceeded 1,500,000 in population; that pursuant to the authority conferred upon it the appellant did construct a channel from a point near Robey street in the City of Chicago to a point near Lockport in the county of Will and State of Illinois; that on January 17, 1900, it did cause the waters of Lake Michigan and of the Chicago River to flow through said channel into the Des Plaines River and from thence into the Illinois River, and that from said day up to the time of the commencement of said suit, and also up to the present time it had caused the waters of Lake Michigan and the Chicago River area to flow through into said main channel into the Des Plaines River and thence into the Illinois River; that said channel was and is a permanent public work, structure or improvement and will continue for all time; that the population of the Sanitary District on January 17, 1900, at the time said channel of the appellant was placed in operation, exceeded 1,500,000 inhabitants; that the population of the Sanitary District of Chicago in March, 1927, and for more than five years prior thereto exceeded 3,000,000 people, and said population of said district has continuously in-

creased since that time; that in order to comply with the provisions of the statute it was necessary to flow through the main channel of the Sanitary District of Chicago from the Chicago River drainage area and the waters from Lake Michigan an amount of water not less than 20,000 cubic feet per minute for each 100,000 of the population of said Sanitary District; that in no time in said declaration mentioned has the flow from said Sanitary District exceeded the amount required by said act, and at no time has there been any flow in excess of the minimum amount which was excessive or unnecessary for sanitary purposes.

That the lands described in appellee's declaration, and each part and parcel thereof was and is so situated that for more than five years prior to the filing of said declaration said water did necessarily overflow, invade and permanently injure said lands.

That the said injury complained of by the appellee in its declaration constitutes and is but one cause of action or right of recovery against the appellant, to wit, a right to recover damages for permanent injury to said lands, which right of action accrued to the appellee more than five years prior to the commencement of this suit.

The several proposed causes of action in said declaration mentioned are one and the same and did not, nor did any or either of them accrue to the appellee at any time within five years next before the commencement of this suit in the manner and form as the appellee has complained against it. The plea concludes with prayer for judgment on the plea.

To this plea the appellee filed a replication, by which replication the appellee admitted the following averments of said seventh plea: That in 1889 there was passed by the General Assembly of the State of Illinois an act as alleged in said seventh plea, which act was approved and in force as therein alleged; that

said appellant was organized pursuant to said act; that the Sanitary District by said act was authorized to construct the said channels and adjuncts thereto for the purpose of carrying off the drainage and sewage of said Sanitary District as in said plea alleged; that said Sanitary District did construct said channels in accordance with the requirements of said act as in said seventh plea alleged; that the appellant on the 17th day of January, A. D. 1900, did cause the waters of Lake Michigan and the Chicago River to flow through said channels into the Des Plaines and thence into the Illinois River and from said day up to the time of the commencement of this suit and up to the present time the appellant has caused the water of Lake Michigan, the Chicago River and the Sanitary District area to flow through said main channel into the Des Plaines River and from thence into the Illinois River as in said plea alleged; that said channels and construction are a permanent public work or structure and intended to and will continue for all time as in said plea alleged; that the population of the Sanitary District of Chicago on January 17, 1900, exceeded 1,500,000, and that the population of the Sanitary District of Chicago in 1927 and for more than five years prior thereto exceeded 3,000,000 people; that to meet the requirements of said act of the Illinois Legislature in that behalf, it was necessary for the appellant to flow through the main channels of the Sanitary District of Chicago, from the Chicago drainage area and the waters of Lake Michigan an amount of water of not less than 20,000 cubic feet per minute for each 100,000 of the population of the Sanitary District of Chicago; that at no time in said declaration mentioned has the flow of water from said Sanitary District exceeded the amount required by said act of the Illinois Legislature; that at no time has there been any flow excessive or unnecessary for sanitary purposes. Said

replication concluded with the following averment: "This appellee further replying to said seventh plea of the appellant says that the property described in appellee's declaration and each part and parcel thereof was not and is not so situated that for more than five years prior to the filing of said declaration the said water from said Sanitary District did necessarily overflow, invade and permanently injure said property, as in said plea alleged; and that said injuries in said declaration alleged are not one act or cause of action or right of recovery against the appellant as in said plea alleged; that the said overflow is not a permanent injury to said property of appellee as in said plea alleged; and that the said right of action did not accrue to the appellee more than five years prior to the commencement of this suit as in said plea alleged; but it says that the several causes of action and each and every of them did accrue to it within five years before the commencement of this suit in manner and form as it has above complained against the appellant."

Appellant made its motion to find the issues for the appellant upon the pleadings and enter judgment for the appellant upon such findings. The motion called the court's attention to the seventh plea in the declaration, being the special plea of the statute of limitations, and to the admissions contained in the replication filed to said seventh plea.

The grounds urged for the granting of said motion were that the declaration charged no violation of the duty imposed upon the appellant by law, which violation resulted in any damage to the appellee; that the seventh plea set up a complete defense to said action and that the replication of the appellee admitted all the material facts necessary to constitute said defense and that under said pleadings there was no issue of fact to be submitted to the jury. The motion to find

the issue for the appellant and enter judgment on the pleadings was overruled.

A bill of particulars having been filed, on motion of appellant, the court ordered a more specific bill of particulars which was filed on May 20, 1930, and which set up the following:

That, "This action is brought to recover from the Sanitary District of Chicago for damages done by diversion of water from its natural channel and course, and thereby damaged the property of the appellee, the appellee being a drainage district duly organized under the Statutes of the State of Illinois."

That the appellee, having acquired certain rights of way for the purpose thereafter of constructing the works of said drainage district thereon, has been in possession of said rights of way; that before April, 1922, the appellee had constructed its levees, interior and open ditches, tile drains, pumping stations, keeper's house, pump building, levees, and open ditches on said rights of way; that the appellant, the Sanitary District of Chicago, in April, 1922, diverted waters from Lake Michigan, the Chicago River and the watersheds adjacent thereto and the sewage from the Sanitary District and caused the same to flow into the Illinois River above appellee's district; that in April, 1922, the river, then being at a high stage by means of said additional water and sewage, then and there overflowed and damaged the said property of the appellee.

The more specific bill of particulars then sets out items of damage occurring in 1922. It then sets out items of damage occurring in 1926.

Thereafter, on January 19, 1931, an amendment to said more specific bill of particulars was filed, claiming as an element of damage expenses of the proceedings taken in the county court of Cass county for the purpose of having assessment made on the property with-

in the district, the amount paid for attorneys' and engineers' fees and court costs in said proceedings. The amendment itemized the court costs, the attorneys' fees and engineers' fees for the spreading of the assessment made to repair the works after the 1922 and 1926 floods.

There was a trial by jury, and verdict and judgment in behalf of appellee in the sum of $40,000, and appellant has brought the record to this court, by appeal, for review.

The Meredosia Lake Drainage and Levee District comprises approximately 4,000 acres of land. Approximately 1,500 acres are located in Morgan county and approximately 2,500 acres in Cass county. It lies east of a body of water known as Meredosia Lake. Meredosia Lake is a body of water about six miles long and from one-half mile to one mile wide, lying in a northeasterly and southwesterly direction connecting with the Illinois River about one and one-half miles south of the southerly line of the district at Meredosia and paralleling the Illinois River, being separated from said river in low water by a strip of land averaging about one and one-half miles in width. The westerly line of said district is along the east edge of Meredosia Lake, and the easterly line of said district is the meander line of the high water of 1844.

The works of the district consist of a levee for a distance of about one-half mile along the northerly end, commonly known as the Indian Creek levee, and is approximately five miles long, along the west side, being the easterly bank of Meredosia Lake, and is approximately two miles long along the southerly end of said district, together with a pumping plant consisting of two units, one a steam driven and the other an electric driven, and a series of interior ditches, one running in a northeasterly and another in a south-

westerly direction, substantially along the center of said district connecting with the pumping plant.

From appellee's evidence it appears that the original works were constructed in 1904, the evidence being silent as to what elevation the levees were constructed; that assessments in the amount of $50,411.81 were levied against the lands of the district for the construction of the original works in September, 1903; that thereafter an additional assessment in the amount of $11,902.85 was levied with which to complete the works; that in 1909 an additional assessment of $40,776 was levied upon the lands within said district for strengthening and improving the various works, including levees, the deepening and widening of its drainage ditches and a duplication of its pumping plant; that another assessment of $31,691.40 was spread in 1914 to repair and strengthen the works of the district.

The lands within this district prior to the construction of the works were overflow lands. The topography shown on defendant's Exhibits 34 and 35 corresponds with plaintiff's Exhibits 73 and 74, which are sheets 16 and 17 of the United States Survey of the Illinois and Des Plaines Rivers made by J. W. Woermann, U. S. Assistant Engineer in 1902–1904, which sheets place the shore line of the water indicated thereon at the elevation of the low water of 1901 which was 9.95 on the gauge of the LaGrange lock, below the dam, said gauge being located approximately two miles west of the center of the district, the zero of that gauge being 418.23, Memphis Datum, which was the datum plane used in establishing the elevations of the upper Mississippi River basin, the water of 1901 being 428.18, Memphis Datum on said gauge.

The lands within the district lie at an elevation from 437 to 450, the majority of the acreage lying below 443, contour line. In a state of nature they were sub-

ject to overflow when the stage of the water was 19 feet at the gauge on LaGrange locks, and when the flood stage was approximately 11 feet on the gauge at Meredosia.

On cross-examination of various of appellee's witnesses it was shown that the lands were subject to frequent overflows prior to the construction of appellee's district, and prior to the opening of appellant's canal, the witnesses testifying that there was a flood in 1883, 1892, 1897, 1898, 1902, 1903 and 1904. One of their witnesses testified that he remembered the flood of 1869 which covered approximately 3,000 acres of the land in the district; that the recurrence of the floods from 1890 to 1900 was the cause of the movement to circulate the petition for the organization of the district.

The evidence showed that the stages of the flood water of the Illinois River increased in elevation and in frequency after the construction of the works of the district, which works were constructed after the flood of 1904; that in 1913 the water rose to as great a flood height as it had ever been known. to rise to except in 1844, with the result that the levees of appellee's district were broken down, the lands within the entire district were flooded, destroying the crops, filling the interior ditches and damaging the levees to the extent that it required an assessment of $31,691.40 to repair the damage.

The high flood stages of the river continued up to 1922, the flood in 1916 reaching an elevation of approximately 22 feet on the Meredosia gauge, and the flood of 1920 reaching an elevation of approximately 21 feet on the Meredosia gauge.

In other respects the testimony followed very closely the facts proven in *Coal Creek Drainage and Levee District v. The Sanitary District of Chicago, supra,* and *George B. Christie v. The Sanitary District of*

*Chicago, supra.* The cases are controlled by substantially the same set of facts, and it would serve no useful purpose to encumber this opinion with their volume. It is first contended that appellee, by its amended declaration, introduced or attempted to introduce a new cause of action into the case, and that it is to be regarded as a new suit commenced when the amended declaration was filed. It is contended by appellant that an amendment shifting or changing from a statutory count to a common-law count or conversely is not allowed, for the reason that it changes the cause of action, citing numerous cases in our courts and the federal courts. Whatever may have been the law of this State prior to the amendment of section 39 of the Practice Act, Cahill's St. ch. 110, ¶ 39, passed by a very progressive legislature in 1929 and approved by the governor on June 26 of that year, it will not be fully certain just what all of the amendments and additions to that section do comprehend, until it and they are fully reviewed by the Supreme Court, as the many phases of those additions come before the court and we therefore do not pass upon the question, as it is not necessary to a decision of this case.

Many questions are raised, cases cited and discussed, which we do not deem necessary to determine for a disposition of this case.

Appellee presents a declaration at common law to recover for injuries caused by intermittent and recurring floods from the channel of the Illinois River, into which appellant has poured its sewage with the waters of Lake Michigan, under the act of its organization. *Jones v. Sanitary District of Chicago,* 252 Ill. 591, 598. These intermittent and recurring floods must have resulted and injured appellee within five years prior to bringing this suit. The works, diversion of water, and channel created by the diversion of water into the Illinois River by appellant, have created a permanent

structure, as held by the Supreme Court in many cases: *Jones v. Sanitary District of Chicago, supra,* page 597; *Schlosser v. Sanitary District,* 299 Ill. 77; the court held in the latter case, page 82: ''The declaration did not complain of the manner of construction, operation or use of the canal or the works connected with it or of any negligence of the appellant, but alleged a permanent injury to the appellee's land caused by the existence, operation and use of the canal in the manner authorized by law. For such injury the person injured must recover all damages which he has sustained or will sustain in the future from the operation of the canal in the manner and to the amount then authorized by law in a single suit, and that suit must be brought within five years after the completion of the work and putting it in operation. (*Suehr v. Sanitary District,* 242 Ill. 496; *Vette v. Sanitary District,* 260 id. 432; *Shaw v. Sanitary District,* 267 id. 216; *Wheeler v. Sanitary District,* 270 id. 461.)''

And in *Suehr v. Chicago Sanitary District,* 242 Ill. 496, 497, the court held: ''The court admitted proof of the effect of the increased flow of water upon the island up to the time of the trial, and the admission of this class of proof is the main question discussed in the brief of appellant. The drainage canal is a permanent structure, and the appellee has the right in this case to recover all damages, past, present and future, which his real estate had sustained by reason of the construction of that improvement; (*Chicago and Eastern Illinois Railroad Co. v. Loeb,* 118 Ill. 203; *Springer v. City of Chicago,* 135 id. 552; *Penn Mutual Life Ins. Co. v. Heiss,* 141 id. 35; *City of Centralia v. Wright,* 156 id. 561; *Galt v. Chicago and Northwestern Railway Co.,* 157 id. 125; *Hyde Park Light Co. v. Porter,* 167 id. 276;) and it is the settled law of this State that it was proper to prove the effect of the increased flow of water upon said island down to the time of the trial.

*Springer v. City of Chicago, supra; Penn Mutual Life Ins. Co. v. Heiss, supra; City of Centralia v. Wright, supra.''*

The rule laid down as to whether the owner must sue for permanent damages or whether he may bring a suit for intermittent and recurring injury, is expressed in *Jones v. Sanitary District of Chicago, supra,* page 596, as follows: ''The contention that the court erred in sustaining the demurrer to the plea of the Statute of Limitations is based upon the claim that as the building of the drainage canal is authorized by an act of the legislature and is permanent in its character, the injury inflicted upon appellee, if any, is permanent, and he is limited to one cause of action for the recovery of all damages, past, present and prospective, and that his right of action accrued more than five years before the commencement of the suit. In support of this contention appellant relies on the class of cases which hold that when the original nuisance or cause is of a permanent character, so that the damage inflicted is of a permanent character and goes to the entire destruction of the estate affected thereby, the recovery not only may, but must, be had for the entire damage in one action, as the damage is deemed to be original. In those cases the injured lands were adjacent to the structure complained of, so that its construction necessarily and immediately destroyed or depreciated their value. This case does not fall within that class. The improvement known as the drainage channel is permanent in character, but it is not alleged that appellee suffered damage by reason of its construction. The construction and continuance of the channel more than two hundred miles from appellee's land is not necessarily an injury. It is the use that has been made of it that it is complained has caused the injury. The declaration alleges that the lands of appellee have been overflowed but a portion

of each year. This might be caused by the emptying of more water from the channel into the river at some time than at others, or it might be the result of the confluence of the waters of the drainage channel with those of a freshet, or with the waters which cause an annual rise in our rivers. In either event it is contingent whether the lands of appellee shall suffer damage,—in the one case upon the action of those in control of the flow of water from the drainage channel, and in the other upon the action of nature. If the flooding was the result of the first named cause, then it was due to the negligent management of the flow through the channel, as the statute provides for a constant flow, which is not to be increased except as the population of the district increases, in which case the increase will be permanent and the flow will still be constant. The fact that the channel is a permanent improvement does not, of itself, serve to determine when, if ever, or to what extent, injury will be suffered. That the injury complained of is not necessarily caused by the construction or existence of this permanent improvement is evidenced by the fact that at times the river is within its banks and the lands of appellee are not overflowed. If, as appellant contends, the Statute of Limitations runs as to such actions as this from the date the drainage channel was completed to Lockport and the flow of water turned on, it is possible for a party to be barred before he has suffered any injury whatever. It is the injury sustained which is the cause of action, and the statute does not begin to run before the cause of action accrues. The permanency of the injury is the test as to whether damages for all time must be assessed." The court holds: "If the flooding was the result, in the one case, upon the action of those in control of the flow of water from the Drainage Canal," the injury is permanent and the statute of limitations runs. If the flooding was the result,—

"And in the other upon the action of nature," "or it might be the result of the confluence of the waters of the drainage channel with those of a freshet, or with the waters which cause an annual rise in our rivers," then, as the court holds in the *Jones* case, the flooding may be intermittent and recurring, and plaintiff may sue, not for permanent damage, but for the damages caused by the recurrences. Applied to the case at bar, appellee's position would be that appellee had never suffered any permanent injury or damage from the construction and operation of the Sanitary District Canal and that the injury to its lands was occasioned and brought about by a legal and lawful flow of water in the Sanitary Canal, not of itself causing injury, but such waters, at recurrent spells, mingling with a freshet or with the waters which cause an annual rise of our rivers, caused the injury. In the *Jones* case, page 599, the court points out the distinction, and cites the *Suehr* case as follows: "Appellant relies upon *Suehr v. Sanitary District,* 242 Ill. 496, as sustaining its contention that appellee's injuries are of a permanent character. In the *Suehr* case the injuries sustained were quite different from those alleged here. In that case Suehr undoubtedly suffered a permanent injury. His ford connecting the island with the main land was destroyed. A part of the island was washed away, including the timber along its edges, and its arable lands were largely submerged and its uses for agricultural purposes were largely destroyed. The injury sustained in that case was clearly of a permanent character, but the facts alleged in this case are essentially different and do not bring it within the rule there announced."

Following the *Jones* case, in *Vette v. Sanitary District of Chicago,* 260 Ill. 432, the court has rather narrowed the limits of suits for temporary injury and the court say on page 437: "Appellee relies upon *Jones*

v. *Sanitary District of Chicago,* 252 Ill. 591, as sustaining his contention that the demurrer to the plea was properly sustained. There is a marked difference between the situation presented in this case and that presented in the *Jones* case, and the holding in the *Jones* case sustains the contention of appellant that the demurrer to the plea here should have been overruled. In the *Jones* case the declaration counted on temporary injuries, only, and recovery was sought for damages occasioned during the five years next preceding the filing of the declaration. The plea of the Statute of Limitations interposed to the declaration in that case set out at length the special facts which were relied upon as a bar, but it did not appear, either from the declaration or from the plea, that the continuance and operation of the channel of appellant would necessarily result in injury to the lands of appellee, and it was held as the turning point in that case, that where the continuance and operation of a permanent structure are not necessarily injurious but may or may not be so, then only the injury sustained prior to the commencement of the suit may be compensated in that suit. The converse of this proposition is true, viz., that where the continuance and operation of a permanent structure are necessarily injurious, then damages for all the injury sustained must be recovered in one suit. In the case at bar the declaration expressly alleges that any additional water caused to flow artificially into the Illinois river would prevent the use of appellee's lands as farm lands and would injure and destroy his crops and his timber, from which it must follow that the continuance and operation of the sanitary district channel are necessarily injurious to the lands of appellee, and he must recover for all damages, past, present and future, in one action. The declaration in the *Jones* case contained no such allegation, but, on the contrary, it was so drawn as to expressly negative such an allegation.''

The same rule was laid down in *Brockschmidt v. Sanitary District of Chicago,* 260 Ill. 502.

In *Shaw v. Sanitary District of Chicago,* 267 Ill. 216, the same question arose as to temporary injury, and the court held on page 218: ''The court gave general instructions advising the jury of the rule of law to be applied in determining the issue of fact submitted, and stating, in substance, that if, from and after January 17, 1900, when the defendant opened its channel, it had continuously caused the water to flow therein and through the Des Plaines and Illinois rivers by the lands of the plaintiff; that the flowing of the water immediately caused an invasion of the plaintiff's lands, producing a reduction in their fair cash market value, and that the construction, operation and use of the defendant's channel under the acts governing the sanitary district would of necessity, and did, affect the plaintiff's lands so as to injure and destroy the pasturage thereon and to damage the crops thereon and to interfere with and prevent the plaintiff from using the land for farming purposes, and that prior to February 3, 1909, the lands were as frequently overflowed and were as continuously submerged by water as they had been during the five years since that date, then the injury and damage were permanent and the plaintiff could not recover in the action. Error is assigned on the giving of these instructions, and also on the refusal of the court to give an instruction requested by the plaintiff, stating that it was admitted that during a portion of each year since January 17, 1900, the land was overflowed and a portion of each year the water was off of the land and the river within its banks, and that therefore damages to the lands during the five years were temporary and not permanent.

''It is contended that there was no evidence upon which to base the instructions given by the court, and that under the rule stated in *Jones v. Sanitary District of Chicago, supra,* there was no evidence tending to

prove a permanent injury and damage to the lands. In that case it was considered that the facts alleged in the declaration created merely temporary and not permanent damages, and that a plea of the Statute of Limitations which did not show that the continuance and operation of the channel would necessarily result in injury to the lands did not bring the case within the Statute of Limitations, and therefore it was not error to sustain the demurrer to the plea. The question raised by the demurrer was one of law, and it did not appear either from the declaration or from the plea that there was a permanent injury to the lands, so that if all the facts alleged in the plea were proved the statute would not bar the action. This was made clear in the case of *Vette v. Sanitary District of Chicago, supra,* in which the declaration alleged that any additional water caused to flow artificially into the Illinois river would prevent the use of the plaintiff's lands as farming lands and would injure and destroy his crops and timber, which was an averment of a permanent injury at the time the water of the drainage channel was turned into the river. The pleas in this case alleged facts constituting a permanent injury, for which the plaintiff might have been compensated in one suit, and the replications took issue on the facts alleged. If the instructions correctly stated the law they were not objectionable for want of evidence to prove the facts alleged.

"It is not necessary and would not be profitable to repeat the rules of law distinguishing temporary from permanent injuries to lands stated in the cases above cited. If the evidence for the defendant is accepted as true, the injury to the plaintiff's lands occasioned by turning the water of the drainage channel into the river on January 17, 1900, was not one which might or might not be continued or might or might not be injurious in the future. The drainage channel

was a construction of a permanent character, and under the act governing the sanitary district a continuous flow was to be maintained for all time, necessarily continuing, without change, the injury to the plaintiff's lands. The court did not err in giving the instructions, which were correct statements of the law.

"The tenth instruction offered by the plaintiff and refused, based a supposed rule of law that the damages to plaintiff's lands were temporary and not permanent upon an admission that in times of low water the lands were not flooded, and were only flooded when the water was high and the river out of its banks. That could only be so if a permanent injury must be continuous and the lands be constantly submerged, but counsel who offered the instruction insist that they take no such position. Their interpretation of the instruction is, that damages arising from intermittent floods, uncertain in time, duration and extent, could not be assessed in one action and therefore are temporary. It is true that the amount of water contributed by the river at different times of flood could not be definitely ascertained, but there would be no difficulty in determining the increase on account of a steady and continuous flow from the drainage channel not affected at all by storms or melting snows. The court did not err in refusing the instruction."

It is highly interesting to peruse appellee's amended declaration, to determine, in the light of the cases cited, whether its injury was a mere temporary intrusion or whether it was permanent.

The amended declaration recites: "Plaintiff further avers that the defendant is a municipal and public corporation organized and existing under and by virtue of the laws of the State of Illinois, and as such corporation the defendant is vested with certain powers under and by virtue of the Statutes of the State of Illinois, creating said defendant corporation, and the

acts amendatory thereto; and that, under and by virtue of said statutes, the defendant is the owner of, and using and operating a system of channels, drains, ditches, outlets and other improvements for the flow of water and sewage; and that in the use of the same the defendant daily withdraws vast quantities of water from Lake Michigan, the Chicago River and Calumet River and that the defendant has reversed the flow of the waters of the Chicago River; that the defendant discharges all of the above mentioned waters, so withdrawn and reversed as aforesaid, together with all of the sewage within its district, which district is comprised of a vast and densely populated area, into artificially built channels, canals and ditches; that all of said waters and sewage aforesaid, are flowed by the defendant daily through its channels, etc., to a point near Lockport, Illinois, whence the same are discharged by the defendant through its said channels and outlets into the Des Plaines River and thence into the Illinois River; that in the ordinary course of nature, neither the waters of Lake Michigan, the Chicago River, the Calumet River, nor the waters from their tributaries or watersheds, or said sewage, ever reached or flowed into the Illinois River as aforesaid; that the defendant thereby causes to be flowed and diverted into the Illinois River, as aforesaid, large quantities of water and sewage, in addition to the waters theretofore naturally flowing into said Illinois River; and that by reason of this addition of said waters and sewage as aforesaid, the natural surface of the Illinois River has been materially raised in the vicinity of and adjacent to the property of the plaintiff.

"Plaintiff further alleges that in and during the month of April, 1922, the defendant in the use and operation of said system of channels, drains, ditches, outlets and other improvements, discharged larger quantities of water and sewage into the Illinois River,

to wit: Exceeding six thousand cubic feet per second, thereby causing the said Illinois River, by said addition of waters and sewage, as aforesaid, to rise to a greater heighth than it otherwise would naturally have risen, to wit: Four feet, and defendant thereby caused said Illinois River to flow over its bank near the levees, tile drains and pumping stations of said plaintiff, and to wash over and break through the levees of plaintiff and overflow and fill up the interior ditches, tile drains, pumping stations and other works of the plaintiff.

"Plaintiff further alleges that said quantities of water and sewage so diverted, as aforesaid, and so cast upon and overflowing and flooding the levees, ditches, tile drains, pumping stations and other works of the plaintiff, caused the said levees, ditches, tile drains, pumping stations and other works of the plaintiff, to be greatly injured thereby, in that the said levees of plaintiff were inundated, washed away and worn down by said water; the said ditches and drainage ditches of plaintiff were thereby enlarged in some places, and filled up in other places, thereby obstructing and destroying their uses as such; that the said tile drains of plaintiff were thereby stopped up, washed out and destroyed, and the said pumping stations of plaintiff were thereby submerged, washed away and destroyed and thereby rendered inoperative and of no further use to plaintiff, until vast and extensive repairs were made thereon; that the buildings and other works of said plaintiff were washed away, submerged, damaged and destroyed thereby; and that the plaintiff suffered great damage thereby, at the time and in the manner aforesaid.

"Plaintiff further alleges that, by reason of the said acts of the defendant as aforesaid, and at the time aforesaid, to wit: In the year of 1922, the plaintiff was necessarily compelled to, and did expend and use a great and increased amount of time, fuel, energy,

extra help and money in pumping and removing the excessive quantities of water and sewage so diverted by the defendant, as aforesaid, from said plaintiff district, as the result of the increased flow and the diversion as aforesaid; that the said increased flow, caused by the diversion of the said water and sewage by the defendant, as aforesaid, left large quantities of water and refuse within the said plaintiff district; that said plaintiff, by reason thereof, was of necessity compelled to, and did increase its pumping capacity and its help, and was of necessity compelled to and did lay out and expend greater sums of money for fuel for pumping and to repair, construct and make extra ditches, drains, etc., in order to relieve said plaintiff district of and from said waters and sewage so diverted and overflowed by defendant, as aforesaid; that the pumping of said excessive waters required a great deal of extra time and increased the burden, both in man power and in money of said plaintiff district, to a great amount over and above that which it was necessary, on the part of plaintiff to use and expend, prior to the acts of the defendant hereinbefore set out and described; that it required many months of extra pumping of the said excess amount of water and sewage so diverted and overflowed to and upon plaintiff's premises and works as aforesaid, and in repairing and in cleaning said ditches of plaintiff district, so damaged and filled up as aforesaid, to relieve said plaintiff district of the excessive waters and sewage, as aforesaid, before said district, could accomplish the usual and necessary work and purposes for which said district was organized; that on account of said wrongful acts of the defendant, said plaintiff district was inoperative and rendered useless, as a drainage and levee district, for the benefit of said territory in plaintiff district, and thereby the purposes and usefulness of said plaintiff district as a drainage and levee district in said

territory, was materially impaired and greatly decreased; and that said plaintiff district was, by reason of said excess water and sewage and before said extra pumping, repairing and cleaning, as aforesaid, of no benefit to said territory as a drainage district; that the capacity of said plaintiff district was overtaxed and that the excess waters were left to remain upon the farming lands in said plaintiff district territory for many months by reason of the said acts of the defendant and the conditions resulting therefrom as above described; that the territory in said drainage district was thereby deprived of its customary, usual and necessary drainage.

"That as a result of the increased flow of the Illinois River, caused by said diversion of water and sewage by the defendant as aforesaid, during said time, the plaintiff suffered great loss and injury thereby and was thereby damaged in the amount of Eighty Thousand Dollars ($80,000.00). Wherefore, on account of the wrongful acts of the Defendant aforesaid and the conditions resulting therefrom as aforesaid, the plaintiff has been damaged in the total sum of Eighty Thousand Dollars ($80,000.00), and therefore, plaintiff brings its suit, etc."

The second count follows with similar charges as to the flood of 1926.

Appellant's seventh plea to the amended declaration set out the full organization and operation of the Sanitary District from 1900 to 1927, and by that plea, which was admitted by appellee, it was charged that the district from 1900 to 1922 poured into the channel consecutively 5,000 cubic feet of water from Lake Michigan in 1900, to 10,000 cubic feet per second in 1922, while the population of the district was ranging from 1,500,000 in 1900, to 3,000,000, in 1922, and it is reasonable to presume that the rate of flow was somewhat graduated, in accordance with the influx of popu-

lation, and that as early as 1910 a much larger flow than 6,000 cubic feet per second was passing into the channel. In fact, appellee's declaration charges that in April, 1922, exceeding 6,000 cubic feet of water and sewage per second were discharged into the channel and caused the damage complained of.

The only possible issue of fact raised in this case is raised in the appellee's replication to appellant's seventh plea, wherein appellee recites: ''This plaintiff further replying to said seventh plea of the defendant says that the property described in plaintiff's declaration, and each part and parcel thereof was not and is not so situated that for more than five years prior to the filing of said declaration the said water from said Sanitary District did necessarily overflow, invade and permanently injure said property, as in said plea alleged; and that said injuries in said declaration alleged are not one act or cause of action or right of recovery against the defendant as alleged in said plea; that the said overflow is not a permanent injury to said property of plaintiff,'' etc. Everything else alleged in the plea is admitted, and the traverse as to the location of the land and its situation, is completely adverse to all the admitted facts in this case. The declaration avers that the vast amount of waters diverted by appellant from Lake Michigan ''have materially raised the surface of the Illinois River in the vicinity of and adjacent to the property of plaintiff.''

Appellee's lands adjoin Lake Meredosia, which is a mere arm of the Illinois River, and the purpose of appellee's organization was the erection and construction of about seven and one-half miles of levees and dykes and embankments between the appellee district and the Illinois River and its arm, Lake Meredosia. It may be said to be proven from the evidence that during every year from the organization of appellee district and the construction of said levees and dykes,

the waters of the Illinois River, including the mingled waters of the appellant district, surged and flowed against said levees and dykes. It was those waters that the levees and dykes were made to break and withstand, and they have always been a permanent injury to said lands, just as the waters of the Illinois River flooded over and were an injury to the lands before the opening of appellant's channel.

The declaration as a whole and each count thereof charge a permanent injury or attempt to charge a permanent injury and are each defective in not charging an additional flow of water in the five years preceding the commencement of this suit from the former five-year period. *Kuhne v. Sanitary District of Chicago,* 294 Ill. 430, 435. The charge in the declaration, "that in April 1922 appellant discharged larger quantities of water and sewage into the Illinois River, to wit: exceeding 6,000 cubic feet per second, and that this quantity of water and sewage so diverted as aforesaid, and so cast upon and overflowing and flooding the levees, ditches, tile, drains, pumping stations and other works of the plaintiff to be greatly injured thereby, in that the levees of plaintiff were inundated, washed away and worn down by said water; the said ditches were thereby enlarged in some places and filled up in other places, thereby obstructing and destroying their uses as such," together with the admissions in the record by appellee that appellant had kept up and continued said flow and diversion of waters upon appellee's land since 1904, and in the Illinois River since 1900 constituted a charge of permanent injury and permanent injury only and has no element of intermittent, recurrent or temporary injury about it. It follows, therefore, that the declaration charged no cause of action against appellant. *Kuhne v. Sanitary District of Chicago, supra.*

Numerous errors are pointed out in the admission of evidence and in the giving of instructions, to none of which have we given any consideration in the disposal of the case. There can be no question about appellee or a proper party having the right to bring an action at common law for temporary or recurring injuries, but when an action is brought for permanent injuries, "consequential damage from the exercise of the power of eminent domain," which are said to be "based either on an implied promise to pay or on a liability under the constitution providing that private property shall not be taken or damaged without compensation," 30 A. L. R. 1190, such actions are not based upon the common law, but are founded upon the statutes providing for such relief and the construction given to such statutes by the courts. *People v. Kirk,* 162 Ill. 138, 152; *Sutter v. People's Gas Light & Coke Co.,* 284 Ill. 634, 640.

A motion was made by appellee in this court to strike the bill of exceptions from the files, which has been taken with the case.

The case was tried at the January term of court, A. D. 1931, and verdict rendered and motion made for a new trial at said January term, which motion was continued for hearing to the March term of court. At the March term of court, on July 3, 1931, the motion for a new trial was heard and overruled and judgment entered, and at the same time appellant was given until September 15 following to present and file a bill of exceptions. The bill of exceptions was presented and filed on September 10, 1931, and this complied with the rule. The continuance of the hearing of the motion for a new trial to the March term continued the jurisdiction of the court over the cause, and the right to order a bill of exceptions at the March term. The motion is overruled.

At the close of appellee's testimony and again at the close of all the testimony, appellant moved the

court to instruct the jury to find a verdict for appellant. Again before the entry of the judgment appellant moved in arrest of judgment, all of which motions were denied and exceptions taken.

It follows from what has been said that the judgment of the circuit court of Cass county should be and is reversed, with a finding of fact.

*Reversed with a finding of fact.*

Findings of fact to be incorporated in the judgment:

The court finds that the facts alleged in the amended declaration, under which the case was tried, do not constitute a cause of action, and that the evidence in the record does not show that the appellee has a cause of action against appellant, which accrued within five years before the commencement of this suit.